STATE EX REL. JOSEPH A. LEVY *v.*
FRANCIS A. PALLOTTI, ATTORNEY GENERAL
[WILLIAM L. HADDEN,
ATTORNEY GENERAL, SUBSTITUTED DEFENDANT]

MALTBIE, C J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 2—reargued December 4, 1946—
decided January 9, 1947

*Charles Welles Gross,* for the appellant (plaintiff).

*Bernard A. Kosicki,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the appellee (defendant).

ELLS, J. On February 1, 1936, the plaintiff was appointed a "special assistant attorney general" under the authority of General Statutes, Cum. Sup. 1935, § 1437c (j), to assist the bank commissioner in connection with the liquidation of state banks in receivership. In 1937 the legislature established a merit system for employees of the state. Cum. Sup.

1939, Chap. 105a. Section 649e thereof provides that "Employees holding positions in the classified service of the state on May 12, 1937, shall automatically retain their present positions without test, and thereafter shall be subject to the provisions of this chapter." By an act passed at the same session but effective June 22, 1937, the word "special" was deleted from subdivision (j) of § 1437c with reference to assistants to the attorney general. Cum. Sup. 1939, § 1201e. The plaintiff occupied his position in the attorney general's department under the designation of special assistant attorney general until June 22, 1937, and thereafter as assistant attorney general until November 30, 1944, when he was dismissed by the then attorney general. In the certificate filed with the personnel director, the attorney general designated the plaintiff as in the unclassified service and gave as the reason for dismissal that the liquidation of banks in receivership had been completed. The plaintiff appealed to the personnel appeal board, in accordance with the provisions of § 427g of the Supplement of 1943. The board decided that he was in the classified service and that the attempted removal was not in accordance with the provisions of the statutes and was, therefore, void and of no effect. The attorney general continued to maintain his position that the plaintiff had been dismissed from service, and the latter sought a writ of mandamus ordering the attorney general to permit him to perform the duties of assistant attorney general and to replace him upon the payroll of the department. The court concluded that he was appointed originally as a special assistant attorney general to aid the bank commissioner in the liquidation of closed

banks, that his status remained unchanged until his dismissal, that he was not entitled to continue in office unless there was further need for his services in connection with those receiverships, and that when he was dismissed there was no longer any such need; and it dismissed the writ. The plaintiff has appealed.

Section 427g gives the personnel appeal board authority only in appeals by state employees who are in the classified service. If the plaintiff was not in that service, the board did not have jurisdiction to decide that he had been wrongfully removed. The Merit System Act contains no provision for an appeal to the courts from any decision of the personnel appeal board, and, if it acts within the power conferred upon it, its decision is final and conclusive. The court in this case could, however, properly inquire whether or not it had acted in accordance with that power. In their argument before us the parties have presented as the sole basis for an attack upon that authority the question whether or not the plaintiff was in the classified service of the state.

The facts already stated were found by the trial court and are undisputed. Much of the evidence in the case is concerned with the question whether the records of the personnel department designated the plaintiff as being in the classified service. The finding contains many paragraphs relating to that issue, and there has been much argument concerning it. The fact that the personnel department, or the attorney general's department, did or did not designate the plaintiff as in the classified service is not of controlling importance. The question is whether he was as matter of law in that service. Likewise,

there is a dispute whether the designation of the position as special assistant attorney general by the statute under which he was hired, in force at the time the merit system became effective, and the later statutory change which deleted the word "special," effected a change in his status. The court found that it had remained the same. The evidence reasonably supports the finding, but upon the question whether or not the plaintiff was in the classified service it makes no material difference. He continued to function in the same capacity, as aid to the bank commissioner in connection with the receiverships. The question before us is whether the plaintiff was in the classified service of the state at the time he was dismissed. It is to be decided upon the basis of the statutory provisions under which he was appointed and those of the Merit Act itself.

We may take judicial notice of the fact that in 1935 many state bank receivership proceedings were pending in the Superior Court, that the receivers were not connected with the bank commissioner's office, and that their counsel were lawyers engaged in private practice. Section 1437c provided that in these pending cases, and future bank receiverships, the court must appoint the bank commissioner as receiver. Subsection (j) of that section provided that "All legal services required . . . in connection with such receivership proceedings or the liquidation or re-organization of such closed banks shall be performed by the attorney general or under his direction. The attorney general may, with the approval of the board of finance and control, appoint such special assistants as may be necessary to furnish said services. The salaries of such assistants shall be fixed by the board of finance

and control and shall be paid by said commissioner out of the funds of the closed banks with the approval of the superior court having jurisdiction. Such salaries and expenses shall be allocated by said commissioner as nearly as possible to the bank for which the services were rendered, and the funds in payment of the same shall be deposited with the state treasurer and shall be credited to the appropriation for the attorney general, without the necessity of approval by the board of finance and control." The amendment of 1937, § 1201e, made no change significant to our present inquiry. The effect of the statute was to cast complete responsibility upon the attorney general. He could perform the required services himself or with the help of his assistant attorney generals appointed under the authority of § 149, or he could appoint, with proper authorization, "special assistants."

Following the passage of the act, the board of finance and control voted "To create three (3) positions of Special Assistant Attorney General, $4500 minimum—$5700 maximum, for the Attorney General's office, the salaries to be paid from receipts of closed banks," and the attorney general thereupon appointed the plaintiff as a "special assistant attorney general." The court has found that the plaintiff's compensation was fixed by the court and was derived solely from the assets of the closed banks, although the payment was actually made through the office of the state comptroller. This finding has been attacked. It appears to mean that the state treasury is merely a conduit through which bank money passes to the assistant attorney generals. We do not accord this construction to the statute. It provides that the board of finance and

control—and by an amendment the commissioner of finance and control—is to fix the salaries, and while it states that they are to be paid out of the funds of the bank with the approval of the court, it goes on to say that the money received from the banks for that purpose is to go into the state treasury and be credited generally to the appropriations of the attorney general. The provisions cannot be interpreted otherwise than to mean that the board—and later the commissioner—shall fix the salaries; that, to the extent they were approved by the court, the salaries would be charged against the funds of the banks; and that the money received from those funds would go into the state treasury as public money. The plaintiff received compensation from the state out of its moneys; but, to the extent the Superior Court approved, the state would be reimbursed. The finding is corrected accordingly.

The act establishing the merit system defines "classified service" to mean "any office or position of trust in the state service, whether full-time or part-time, for which compensation is paid, with such exceptions as are stated in section 642e." It is manifest that at the time the Merit Act became effective the plaintiff occupied a position of trust in the state service for which compensation was paid and that he continued to occupy that position at the time he was dismissed. He was, therefore, in the classified service, unless the position he held came within one of the exceptions designated in the act. The only exception claimed to be applicable is that contained in § 642e (1): "persons employed to make or conduct a special inquiry, investigation, examination or installation." The defendant claims that the office constituted a "special installation," but he has

not attempted to define "installation." We have been unable to find a definition which even remotely relates to the present circumstances. The substance of the defendant's claim is that the plaintiff was employed to install new machinery for the liquidation or reorganization of closed banks. The statute in question installed the system in conjunction with the pre-existing jurisdiction of the court, and directed the bank commissioner to operate it. The plaintiff was employed only to render legal services in connection with the operation of that system, and was an employee of the state, under the direction and control of the attorney general. It follows that the plaintiff was not a person employed to make or conduct a special installation.

The defendant further claims that the plaintiff's position was temporary in nature and that the legislature could not have intended to include such appointments, of uncertain duration, in the merit system. There is nothing in the finding or in the statutes to indicate that the employment was of a temporary kind; if it was, § 666e of the Merit Act specifically indicates that such appointments may be included in the merit system, for it provides that "When any employee in the state classified service . . . shall be dismissed from his office or position because of lack of work . . . the director shall cause the name of such employee to be placed on the re-employment list for the appropriate class for which he shall have qualified for future re-employment when vacancies in the class shall occur."

The crux of the situation is that the state position which the plaintiff occupied was covered by the act. There is no ambiguity in the legislative language and, therefore, we are not impressed by

the argument that it intended to express something else. If the services of assistant attorney generals particularly. charged with the duty of aiding the bank commissioner in connection with receiverships were no longer required, the legislature could at any time have repealed the provision authorizing him to appoint them. It has done so. Sup. 1945, § 754h.

Our conclusion is that the plaintiff was in the classified service of the state when the attorney general dismissed him. It does not follow, however, that he was entitled to have a judgment directing the attorney general to employ him in his office and restore him to the payroll of his department. A writ of mandamus is a prerogative writ, which will issue only to enforce a clear legal right where the person to whom it is addressed is under a legal obligation to perform the act commanded. *State ex rel. Rowell* v. *Boyle,* 115 Conn. 406, 412, 162 A. 26; *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 253, 146 A. 382; *State* v. *Towers,* 71 Conn. 657, 663, 42 A. 1083. The plaintiff was not in the class of regular assistant attorney generals. Section 149 of the General Statutes specifies the general duties of the attorney general, and it directs him to appoint a deputy. It formerly provided: "He shall appoint such other assistants as he shall deem necessary, subject to the approval of the board of finance and control." This statute was amended in 1937 to make the appointments subject to the approval of the governor. Cum. Sup. 1939, § 49e. Men so appointed are undoubtedly, in the contemplation of the statute, to assist the attorney general in the performance of his general duties.

Section 1437c (j) provided that all legal services required by the bank commissioner in connection

with bank receiverships should be performed by the attorney general or under his direction, and he was authorized, with the approval of the board of finance and control, to appoint "such special assistants as may be necessary to furnish said services." This act was amended in 1937 (Public Acts, 1937, Chap. 419, § 10; Cum. Sup. 1939, § 1201e) to provide that the approval should be by the commissioner of finance and control. It is true that this amendment omitted the word "special" in the quotation made from § 1437c (j) above, but the words "as may be necessary to furnish said services" remained. "Said services" referred to legal services to the commissioner in connection with the receiverships. An assistant appointed under this act had no authority to perform services except for the bank commissioner in that connection. It still remained true that, though no longer in name "special" assistants, persons appointed under the statute continued to be assistants, not to aid the attorney general in the general duties of his office, but to aid him in the performance of a particular duty. That distinction is emphasized by the fact that the amendment enacted in 1937 concerning general assistants made the appointments subject to approval by the governor, while that concerning assistants to aid in the performance of duties in connection with the bank receiverships made the appointments subject to the approval of the commissioner of finance and control. We cannot avoid the conclusion that the statutes established two distinct offices of assistant attorney generals. The trial court was correct in concluding that the plaintiff, despite the amendment to the statute which omitted the word "special," continued to be an assistant atttorney

general charged with the particular function of assisting the bank commissioner in connection with the receiverships and authorized by statute to act only in that capacity. To direct the attorney general to attach him to his office as a regular assistant attorney general would be to give him that status, although his appointment had not been approved by the governor, as required in the case of regular assistants, and to entrust him with duties which the statutes never contemplated he should perform.

The trial court states in its conclusions that the employment of the plaintiff ended on November 30, 1944, because his services were no longer required by the bank commissioner in connection with the receiverships. It is of no consequence whether or not we regard this as a finding of fact that his services were no longer needed for that work. As already noted, the statutory authority for the office of assistant attorney general charged with the performance of that work has been repealed. Should we remand the case, this fact would have to be considered by the trial court; *State ex rel. Shelton* v. *Edwards,* supra, 254; and it could not do otherwise than refuse to issue the peremptory writ.

There is no error.

In this opinion the other judges concurred.