WILLIAM J. PAPE II ET AL. *v*. VIVIAN S. McKINNEY ET AL.

HOUSE, C. J., BOGDANSKI, LONGO, BARBER and MACDONALD, Js.

Argued February 4—decision released April 13, 1976

*J. Warren Upson,* with whom was *Thomas F. Upson,* for the appellants (plaintiffs).

*Michael J. Daly III,* with whom were *James F. Meenan,* legal assistant in the office of the corporation counsel, and, on the brief, *John D. Mahaney,* corporation counsel, for the appellees (defendants).

HOUSE, C. J. This appeal is from a judgment of the Superior Court for the judicial district of Waterbury. The named plaintiff is the publisher of three newspapers and the coplaintiff is the corporation which publishes, prints and circulates them. The defendants are the members of the board of education of the city of Waterbury and the clerk of that board. The gravamen of the complaint, filed August 13, 1973, is that the defendants violated the provisions of § 1-21 of the General Statutes as it then read with respect to giving notices of two of their meetings and to keeping records of minutes of those meetings and the votes of individual members on each issue voted on at the meetings. By way of relief, the plaintiffs claimed "[a] Writ of Mandamus ordering the defendants, and each of them, to supply the plaintiffs with copies of the minutes of the meeting of June 11, 1973, together with a statement setting forth the vote of each of the defendant members in relation to such issues, and that the plaintiffs be supplied by the defendants with the record of the votes of each member of said Board of Education upon each of the issues before it at the meeting of June 28, 1973." In answer to the complaint, the defendants denied the material allegations of the complaint insofar as they alleged a violation of the provisions of § 1-21. Thereafter, the plaintiffs moved for a summary judgment, claiming that there existed no genuine issue as to any material fact, supporting their motion by an appropriate affidavit of the named plaintiff. The

defendants filed counteraffidavits and an objection to the motion for summary judgment asserting that there did exist a genuine issue as to the material facts alleged in the complaint. The judgment as rendered, after reciting the foregoing pleadings, states simply that the action then continued "thence to the present time when the parties appeared and were at issue to the Court, as on file. The court, having heard the parties on said Motion for Summary Judgment, finds the issues for the defendant. Whereupon It Is Adjudged that the defendants recover of the plaintiffs their costs taxed at $     ." We find the judgment more than a little confusing in that it literally appears to have been rendered only on the contested motion for summary judgment, finding the issues for the defendant on that motion, and makes no reference to the basic issue raised by the pleadings—whether the plaintiffs were entitled to the writ of mandamus which they sought. It clearly does not conform to a proper form of judgment to be entered in a mandamus action. See *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 468 n.1, 106 A.2d 713. Since, however, the judgment does appear to have been intended as a final one on the merits of the action, in view of the adjudication that the defendants should recover their costs and the court did file a finding of facts which is unattacked, we will treat the judgment, as have the parties on the appeal, as a final one on the merits adjudging that the plaintiffs' request for an order in the nature of a mandamus was denied.

Although the issues are relatively simple, it is necessary to recite the facts found by the court in some detail in order to place them in understandable context. The amount and extent of the circu-

lation of the plaintiffs' newspapers depends partly upon obtaining and disseminating news of public events occurring within the city of Waterbury. Under the provisions of § 1-21 of the General Statutes which govern both the giving of notice and the recording of the doings of meetings of government agencies, it is the duty of the defendant McKinney, clerk of the board of education, to keep a record of the doings of that board and record and make available for inspection and copying the motions and minutes of the board. It is also the duty of the board and its members to hold and conduct meetings, to give notice of such meetings, to record the doings of such meetings in conformity with § 1-21 and to supervise the clerk of the board so that there is compliance with the requirements of the statute. On June 11, 1973, six of the ten members of the board met with the superintendent of schools, the deputy superintendent, and the director of elementary education at a "work session" where there was a discussion of a memorandum prepared by the director of elementary education relating to the class size problems which were expected to arise when schools reopened in September. The defendant McKinney, clerk of the board, did notify each member of the board of this meeting but no public notice was given and she did not attend it. No minutes or other record of what transpired at the meeting were kept except that the director made a notation on his copy of the memorandum referring to the "6/11/73 Bd. of Ed. caucus," and listing the names of the six members who attended and of the other two school officials followed by "O.K." This document was, thereafter, taken surreptitiously from the director's files and delivered into the possession of the executive editor of the plaintiff news-

papers. The unattacked finding of the court is that "[n]o decisions were made at the meeting of June 11, 1973 and no votes were taken at such meeting." The court further found that it was not a regularly scheduled meeting of the board of education and that no public notice of the meeting was given as required by § 1-21 for a special meeting nor was there compliance with the requirements for holding an executive session. It also found that during the course of the litigation the plaintiffs had already acquired whatever information was available concerning the meeting.

As to the second meeting in question, held June 28, 1973, the court found that at the regular meeting of the board held on June 18, at which a reporter from the plaintiff newspapers was present, it was voted to hold a meeting on June 28 in substitution for the meeting previously scheduled for July 2 since several members would be away on July 2. The clerk of the board gave notice to the city clerk of the changed date by letter dated June 21, 1973, and sent postcard notices to the members of the board, the mayor, the superintendent of schools, the school building inspector, the newspapers operated by the plaintiffs, and the liaison member of the board of aldermen, as is her regular practice.

On August 3, 1973, the named plaintiff made a request of the board of education for the minutes of meetings of the board held on June 11 and June 28. No minutes of the meeting held on June 11 were sent to him, no such minutes having been recorded. Minutes of the meeting held on June 28 were sent to him. In all minutes of the board meetings kept up until and including the minutes of the June 28 meeting, the clerk recorded the votes of

the members as follows: (1) a vote upon a motion with nothing further indicates a unanimous vote of the board; (2) the names of members voting affirmatively were not recorded individually in the minutes; (3) the names of members voting negatively or abstaining were individually recorded in the minutes. The court found that "[t]he names of members who voted in favor of any motion could be readily ascertained by comparing the names of the members in attendance with the names of those whose names were recorded as voting negatively or as abstaining upon a particular motion." This finding was not attacked. The court further found that when a roll call vote was requested it was recorded in the minutes as such and names of those voting affirmatively and negatively or abstaining are listed specifically.

On the basis of these facts which it found, the court concluded that the board has a duty to comply with the requirements of § 1-21, that the meeting held on June 11 was in fact a special meeting and the statutory provisions as to notice and as to holding executive sessions were not complied with. It concluded, nevertheless, that it is impossible to comply with the plaintiffs' prayer for relief seeking copies of minutes of the meeting and notes taken at the June 11 meeting because the evidence is clear that no notes were taken and no minutes of the meeting were kept. It also concluded that, since the plaintiffs have already acquired whatever information is available concerning the informal meeting of June 11, no decree of equitable relief to the plaintiffs would be of any avail and noted that the plaintiffs did not seek damages. As to the clerk's method of recording votes, the court concluded that the minutes of the June 28 meeting comply with the

provisions of § 1-21 "because the identity and vote of each person voting can be readily ascertained from the minutes by consulting the minutes, which list the names of all members present, and identify by name all those voting negatively and all those abstaining from voting."

It was on the basis of these conclusions that the court directed that judgment enter for the defendants, in effect determining that the plaintiffs were not entitled to the issuance of the writ of mandamus which was the specific and only relief requested in their complaint. On their appeal, the plaintiffs have briefed two claims: (1) that the court erred in holding that the plaintiffs are not entitled to a copy of the notice of the meeting of June 11, the minutes of that meeting and a record of the votes cast by each member, and (2) that it erred in concluding that the clerk's method of recording the votes of members of the board complied with the requirements of § 1-21.

In discussing the plaintiffs' claims, it is important to bear in mind the basic principles which govern the issuance of the preemptory writ of mandamus. "It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. *Chesebro* v. *Babcock,* 59 Conn. 213, 217, 22 A. 145; High, Extraordinary Legal Remedies (3d Ed.), pp. 10, 13. That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . Even though the plaintiff has a legal right to the matter sought, the writ will not issue if that right be nothing more

than a naked right. In addition to a bare legal right, he must have a proper interest in, and a proper purpose to be served by, the doing of the act sought to be ordered. . . . 'If the right sought to be enforced is or has become a mere abstract right, the enforcement of which will be of no substantial or practical benefit to the petitioner, the writ will not issue though otherwise the applicant would be entitled to it.' *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 253, 146 A. 382." *State ex rel. Donahue* v. *Holbrook,* 136 Conn. 691, 693, 73 A.2d 924. Although the remedy by mandamus is at law, its allowance is governed by equitable principles; *Sullivan* v. *Morgan,* 155 Conn. 630, 635, 236 A.2d 906; and "it has been generally held that it will be denied where, by reason of events occurring subsequent to the commencement of the proceedings or because of lapse of time, the relief sought would be nugatory or unavailing." *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 255, 146 A. 382.

Applying these governing principles to the facts found by the trial court, we find no abuse of its discretion and no error in its application of equitable principles in refusing at the time it rendered its judgment in June, 1974, to order that the defendants then furnish to the plaintiffs a copy of the notice of the June 11 meeting, a copy of nonexistent minutes and a record of votes never cast. This is particularly so in view of the unattacked finding that no minutes or other record of what transpired on June 11 were kept except a memorandum, possession of which was subsequently surreptitiously delivered to the executive editor of the plaintiff newspapers, no decisions were made, no votes taken, and no minutes recorded. It is not without good reason that the plaintiffs assigned no error to the

court's conclusions that it is impossible to comply with their prayer for relief seeking copies of the minutes or notes taken, no error to the conclusion that the plaintiffs have already acquired whatever information is available concerning the meeting and no error to the court's most significant and important conclusion—that "no decree of equitable relief would be of any avail."

The plaintiffs' second claim on their appeal asserts that the court erred in holding that the method of recording the votes of the members of the board complied with the requirements of § 1-21. We have already noted the method used and the court's conclusion that it complied with the statute "because the identity and vote of each person voting can be readily ascertained from the minutes by consulting the minutes, which list the names of all members present, and identify by name all those voting negatively and all those abstaining from voting." This conclusion is amply supported by the unattacked findings that the names of members who voted in favor of any motion could be readily ascertained by comparing the names of the members in attendance with the names of those whose names were recorded as voting negatively or as abstaining upon a particular motion and that when a roll call vote was requested it was recorded in the minutes as such and the names of those voting affirmatively and negatively or abstaining are listed specifically. The plaintiffs, nevertheless, contend that the provision of § 1-21 which reads: "The votes of each member of any such body upon any issue before such body shall be reduced to writing and made available for public inspection within forty-eight hours, excluding any Saturday, Sunday or legal holiday, and shall also be recorded in the minutes of the session at which

taken, which minutes shall be available for public inspection at all reasonable times," requires a roll call vote upon every issue so that the secretary can accurately determine the number of those voting in the negative, and the number abstaining. With this contention we do not agree. Rather, the observation contained in the court's memorandum of decision seems to be a reasonable interpretation of the statute's requirements. It stated: "This provision requires that there be a written record of the vote of each member of the Board of Education, but it is not so picayune as to require a detailed listing of the 'yeas and nays' by name. So long as each member's vote can be ascertained from the minutes with no more than a reasonable amount of mental effort, the statutory requirement has been satisfied. The method of recording the votes used by the defendant McKinney obviously meets this test." It is pertinent to note that this court in a case in which it was necessary to interpret the same statutory language concerning the recording of votes had no difficulty in finding that when the governor was present at a meeting and the minutes stated that the meeting voted to approve a certain allocation of funds the governor voted for the allocation although his name and vote was not separately and individually recorded. The court noted: "The minutes here would foreclose any member of the bond commission from denying that he had voted in the affirmative for the approval of the allocation unless he had requested that his vote be recorded in the negative. The minutes record no dissenting vote, and it must be assumed that the governor voted with the other members of the commission for approval." *Delinks v. McGowan*, 148 Conn. 614, 622, 173 A.2d 488. We find no error in the court's conclusion that the secre-

tary's method of recording the votes complied with § 1-21 and no merit in the plaintiffs' contention that § 1-21 requires a roll call vote on every issue.

There is no error.

In this opinion LONGO, BARBER and MACDONALD, Js., concurred.

BOGDANSKI, J. (dissenting). The method of recording the votes of the members of the defendant board did not comply with the mandate of § 1-21 of the General Statutes.

Section 1-21 requires that "[t]he votes of each member of any such body upon any issue before such body shall be reduced to writing and made available for public inspection within forty-eight hours . . . ." There is no ambiguity in the language. The trial court's conclusion that the defendant McKinney's furnishing of the minutes of its meeting complied with that statute because the identity and vote of each person voting could have been ascertained (since the minutes list the names of all members present, and identify by name all those voting negatively and all those abstaining from voting) should not stand.

Section 1-21 requires two separate written records of meetings: (1) a listing of the votes and (2) copies of minutes of the meeting. The plaintiffs did not seek copies of the minutes. What they did seek was "that the plaintiffs be supplied by the defendants with the record of the votes of each member of said Board of Education upon each of the issues before it at the meeting of June 28, 1973." Since that request was not complied with, the board failed to carry out a clearly defined statutory duty imposed upon it.

There are ten members on the defendant board. If we assume that all ten members were in attendance but that, before a vote on an issue was taken, two members left the meeting for one reason or another, and thereafter a vote was taken and recorded according to the method followed by the board and, of the remaining eight members, two voted negatively and one abstained, it would then be impossible to know who the members were that voted affirmatively.

Assume again that all ten members were in attendance but, before a vote was taken, four members left the meeting and the remaining six voted affirmatively. It would again be impossible to know who the six members were who voted affirmatively since the procedure followed by the board as found by the trial court would record the vote as follows: "[A] vote upon a motion with nothing further indicates a ·unanimous vote of the Board."

The foregoing examples are not intended to suggest that, in the present case, the defendants intentionally or inadvertently failed to make known how a particular member voted on a particular issue, but, rather, they are intended to illustrate that submission of the minutes in place of a clear record of the votes could lead to possible irregularities and an infringement on the public's right to know.

Because of the tremendous increases in governmental agencies and the great impact that their actions have on the individual, it is important that individuals have knowledge of the doings of these bodies. The provisions of § 1-21 accomplish a salutary objective in this regard by requiring specific and full disclosure of their doings. Moreover, each individual is better able to select more respon-

sive members if he possesses knowledge of their views. While it is true that such knowledge can be gained by attendance at open sessions, knowledge of the voting records of an agency member at an executive session would not be possible in the absence of the statutory requirements of § 1-21.

To meet the mandate of § 1-21, a roll call vote is required so that the secretary can accurately record the names of those voting in the affirmative, the names of those voting in the negative, and the names of those abstaining. It is not enough for the chairman merely to ask for ayes and nayes upon a motion. The intent of the statute is specific: *full disclosure.* This court should not condone anything less than what the statute specifically requires.

I would, therefore, find error, reverse the judgment and order a remand with direction that judgment of mandamus be rendered for the plaintiffs.