M & L Homes, Inc. *v.* Zoning and Planning Commission of the Town of Montville

Peters, Healey, Parskey, Armentano and Shea, Js.

Argued March 12—decision released May 25, 1982

*Roy H. Scharf,* for the appellant (plaintiff).

*James J. Devine,* for the appellee (defendant).

ARTHUR H. HEALEY, J. The plaintiff, M & L Homes, Inc., sought a writ of mandamus ordering the defendant zoning and planning commission of the town of Montville to issue a certificate of approval for its subdivision plan and to cause such approval to be endorsed by the chairman or secretary of the defendant upon the town clerk's filing a copy of that plan. The plaintiff claimed that its subdivision plan of "Scarborough Estates, Section II" submitted to the defendant on October 28, 1975, was approved pursuant to General Statutes § 8-26 by virtue of the defendant's failure to "approve, modify and approve, or disapprove [it] . . . within the period of time permitted under Section 8-26d." Under General Statutes § 8-26d (b): "A decision on an application for subdivision approval, on which no hearing is held, shall be rendered within sixty-five days after receipt of such application."[1] The trial court denied the request for the writ of mandamus and this appeal followed.

---

[1] The record does not disclose and no claim is made that a "hearing" was held on the plaintiff's application for subdivision within sixty-five days of its receipt by the defendant.

The facts relevant to our disposition of this appeal are as follows: On October 28, 1975, the plaintiff filed an application for a subdivision with a map or maps called "Scarborough Estates, Section II" (hereinafter, the original application) with the defendant commission concerning land which it owned in Montville. It was formally received by the defendant on November 11, 1975. See General Statutes § 8-26d (c). On January 27, 1976, seventy-seven days after the application's receipt, the plaintiff's engineer and agent, Frederick Hayes,[2] requested and received from the defendant a sixty day extension for this application. On April 5, 1976, the plaintiff revised its subdivision maps and on July 7, 1976, the Montville inland wetlands commission approved the subdivision based on the revised maps, subject to certain special conditions and limitations.[3] On September 14, 1976, the defendant held a meeting to consider final approval of the plaintiff's application, but withheld final approval because no representative of the plaintiff was present.

On November 22, 1976, the plaintiff's agent, Hayes, sent a letter to the defendant requesting its review of preliminary plans for resubdivision of Section II and also requesting withdrawal of the plaintiff's Section II application.[4] By letter

---

[2] Frederick Hayes, who was a civil engineer and land surveyor, headed the firm of Frederick M. Hayes Associates, Inc., P.C.

[3] This occurred after the Montville inland wetlands commission held a public hearing on June 23, 1976, to consider the application and amended subdivision plan. On July 14, 1976, the defendant mailed a notice of its decision of July 7, 1976, to the plaintiff.

[4] This letter, which concerned "Scarborough Estates, Section I & II, Montville, Connecticut" recited in part that "[w]ith respect to the above referenced approved 15 lot subdivision, Section I & 35 lot Section II application for subdivision on behalf of the owner Mario Demelis [sic] of Middletown, Connecticut, we request your

to Hayes, dated December 15, 1976, the defendant replied and suggested that the revised proposal be submitted to the inland wetlands commission and, "as soon thereafter as possible," arrange to have the new proposal placed on the defendant's agenda. On February 28, 1977, the plaintiff's agent, Hayes, wrote to the defendant requesting that the revised layout approved by the inland wetlands commission be placed on the defendant's agenda as the "final subdivision known as 'Scarborough Estates, Section II.'" At a meeting of the defendant held on April 12, 1977,[5] the defendant commission informed the plaintiff's representative that its preliminary original application for Scarborough Estates, Section II had been withdrawn in November, 1976, as requested by Mr. Hayes and that the plaintiff now had to submit a new application as well as a copy of the decision of the inland wetlands commission.[6]

On April 14, 1977, the plaintiff submitted to the defendant another subdivision application (the new application) for approval of Scarborough Estates, Section II. Unlike the original application, this was marked "final" by the plaintiff. In addition, the

review and comment of the enclosed preliminary plans for resubdivision of both Section I & Section II, under your 'open space' regulations . . . . The following items would have to be approved prior to your approval: 1.) Withdrawl [sic] of Section II application . . . ." (Emphasis in original.) This letter, which is an exhibit in evidence, notes the following at the end: "cc/Mr. Mario Demelis. [sic]"

[5] The minutes of the defendant commission for the meeting of April 12, 1977, state: "SCARBOROUGH ESTATE—Section II. Montville, Conn. — Robert Pfanner [of Frederick M. Hayes Associates]. Mr. Pfanner was informed that the application for Section II had been withdrawn in November 1977. Need a new application. Must also have a copy of a letter from Wetlands. Section I was approved. This matter will be placed on the agenda for the workshop meeting which will be held on April 26, 1977 at the Town Hall."

[6] The trial court's memorandum of decision at this point states: "The record indicates no objection by the plaintiff."

new application, on its face, differed from the original application in that the number of lots was reduced and the presence of a sanitary sewer line was noted.[7] The defendant commission considered the new application at a workshop meeting on April 26, 1977, with the plaintiff's agent and found that certain matters still needed clarification or further consideration. Shortly thereafter, by letter dated May 2, 1977, the defendant commission wrote to Frederick M. Hayes Associates, the plaintiff's representative, explaining the difficulties that remained with the application. In that letter the defendant commission also indicated that as soon as the plaintiff made the recommended changes, it would "promptly take action on the application for the proposed subdivision." Apparently the plaintiff failed to provide the defendant commission with the information it requested in its May 2, 1977 letter because at its meeting of June 14, 1977, the defendant commission unanimously denied the plaintiff's new application "in view of incomplete documentation, availability of which had been previously requested by letter."

By letter dated June 2, 1977, counsel for the plaintiff wrote to the defendant making a demand, pursuant to General Statutes § 8-26, for a certificate of approval for the subdivision, based on its original application for approval which had been filed with the defendant on October 28, 1975.[8] The defendant

---

[7] The defendant argues that it also contained, inter alia, new road configurations, open spaces, etc.

[8] This demand letter stated the following:

"Gentlemen:

On behalf of M & L Homes, Inc. and pursuant to Section 8-26 of the Connecticut General Statutes, this is to constitute a demand for a certificate of your approval of the above referenced subdivision.

Application for approval of this thirty seven lot subdivision was made on October 28, 1975. Under Section 8-26d, the date of receipt

commission, by a letter dated June 15, 1977, wrote back to the plaintiff's counsel acknowledging receipt of his letter of June 2, 1977, requesting a certificate of approval and pointed out, inter alia, that a check of the commission's files revealed "a letter dated November 22, 1976 signed by Mr. Hayes requesting the withdrawal of the Section II application, and [that] a new application was submitted to us April 26, 1977."

Thereafter, the plaintiff's counsel, by letter dated June 22, 1977, wrote to the defendant commission stating that he understood from communications with the Hayes office "that some progress is being made" and that, as counsel, he was "taking no further action for the time being without, however, waiving any rights asserted in my letter of June 2, 1977." On January 10, 1978, the plaintiff's counsel wrote the defendant commission again making a demand for a certificate of approval as he had in his letter of June 2, 1977, adding, however, that if "I do not hear from you or your attorney within ten days from the date of this, I will institute a mandamus action." The plaintiff instituted its mandamus action in May, 1978.

The trial court denied the issuance of a mandamus and found that "the fact that the plaintiff withdrew its [original] application, submitted a

of such application by your commission would have been November 11, 1975 at the latest. By letter dated January 27, 1976 our engineer requested a sixty day extension, which expired March 15, 1976.

I also refer you to the case of *Leech* v. *Gaetz* 31 Conn. Sup. 81, reported in the Connecticut Law Journal of July 30, 1974.

I will expect your certificate of approval immediately after your June 14 meeting."

The plaintiff's brief indicates that Mario DeMelis, president of the plaintiff, did not consult with counsel until the summer of 1977.

new application and engaged the defendant and the Inland Wetlands Commission in protracted and involved negotiations, indicates that the plaintiff had decided to forego its right to *de jure* approval." (Emphasis in original.) It also concluded that the evidence submitted was "sufficient to establish that the plaintiff is estopped from claiming approval by operation of law."[9]

The plaintiff claims that the trial court erred: (1) in finding that the original application was, in fact, withdrawn; (2) in implying that the delay of the plaintiff in asserting its claim to de jure approval was such as to contribute to the denial of the mandamus relief; and (3) in determining that the evidence established that the plaintiff was estopped from claiming approval of its subdivision by operation of law.[10] Because we agree with the trial court's holding that the original application was withdrawn, we need address only that issue.

The defendant concedes that the sixty-five day deadline imposed by General Statutes § 8-26d[11] for

[9] The defendant interposed a special defense of waiver to the plaintiff's complaint. The trial court, although it explicitly stated that it was not necessary (in view of its disposition) to reach the merits of the special defense, nevertheless, "notes that the evidence submitted by the defendant to support its special defense of waiver was not sufficient to establish the intentional relinquishment of a known right." In view of our disposition of this appeal, we have no necessity to and will not discuss the special defense of waiver.

[10] In its brief the plaintiff characterizes the trial court's statement that "the plaintiff had decided to forego its right to *de jure* approval" as the "second basis for the court's decision [which] must be interpreted as abandonment." We do not so consider this language when it is construed in its proper context and need not reach the question of abandonment as such in view of our approach to the disposition of this appeal.

[11] General Statutes § 8-26d provides: "(a) In all matters wherein a formal application, request or appeal is submitted to a planning commission under this chapter and a hearing is held on such application, request or appeal, such hearing shall commence within sixty-

a decision by the defendant on the plaintiff's original application expired on January 15, 1976. See General Statutes §§ 8-26, 8-26d. It also recognizes that its failure to approve, modify and approve, or disapprove the plaintiff's original application within that period constituted an approval of that application by operation of law under the statute.[12] See General Statutes § 8-26; *Gervasi* v. *Town Plan & Zoning Commission*, 184 Conn. 450, 454, 440 A.2d 163 (1981); *Viking Construction Co.* v. *Town Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980). The statute specifically provides: "The failure of the commission to act [on the subdivision application] shall be considered an approval, and a certificate to that effect shall be issued by the commission *on demand*." (Emphasis added.) General Statutes § 8-26. The plaintiff made no such demand until the June 2, 1977 letter

five days after receipt of such application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such application, request or appeal.

"(b) A decision on an application for subdivision approval, on which no hearing is held, shall be rendered within sixty-five days after receipt of such application. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed sixty-five days.

"(c) For purposes of subsection (a) or (b) of this section, the receipt of an application, request or appeal shall be the day of the next regularly scheduled meeting of such commission or board, immediately following the day of submission to such board or commission or its agent of such application, request or appeal or thirty-five days after such submission, whichever is sooner."

[12] The defendant, in its brief, concedes that "[i]f the plaintiff simply demanded a certificate of approval of the Section II application pursuant to the terms of Section 8-26 of the Connecticut General Statutes then in effect . . . the defendant would have been required to issue the certificate."

to the defendant, shortly after which his counsel wrote the defendant, on June 22, 1977, to indicate that he was "taking no further action for the time being . . ." as he understood from the Hayes office "that some progress is being made." Even later, on January 10, 1978, the plaintiff again wrote demanding a certificate of approval.

The plaintiff retained the engineering firm of Frederick M. Hayes Associates[13] from the time of its original application and it was authorized to act for it throughout its doings with the defendant as well as with the inland wetlands commission and the sewer authority. Hayes himself wrote the defendant on January 27, 1976, requesting a sixty day extension which was granted, indicating that more time was necessary for review of sewerage plans and approval from inland wetlands.[14] The subdivisions were revised. Inland wetlands finally approved the revised plans on July 14, 1976 after certain revisions and a public hearing.[15]

The trial court found as a fact that the plaintiff withdrew its original application. Such a determination on the evidence before it was not clearly erroneous as the plaintiff claims. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217,

[13] The letterhead of this firm which appears on a number of exhibits in evidence reveals the following: "Frederick M. Hayes Associates, Inc., P.C.—Land Surveying—Construction Layout Boundaries & Subdivisions." We also note that the plaintiff retained the services of the consulting engineering firm of Edward J. Kant & Associates, Inc.

[14] The chairman of the defendant commission testified in the trial court that the commission went over the original application at its meeting of November 25, 1975, and that "[t]hey were nowhere near ready for final approval."

[15] This matter came to the inland wetlands commission on February 27, 1976 and that commission held a special meeting at which it was taken up.

220–22, 435 A.2d 24 (1980); Practice Book § 3060D. In light of the ongoing activity, including the Hayes letter of November 22, 1976, and the plaintiff's filing of the new application with a request for a determination of it, it is evident that the plaintiff not only withdrew the original application, but did, as the trial court determined, decide to forego its right to de jure approval. In his letter of November 22, 1976, to the defendant commission, Hayes requested their "review and comment of the enclosed preliminary plans," pointing out that while the plaintiff realized this was a preliminary proposal, it felt that the development of the land would be properly served both as to the wetlands and potential owners "in a more economical and feasible manner than as shown by the previously developed plans." Hayes then stated that "[t]he following items would have to be approved prior to your approval: 1.) Withdrawl [sic] of Section II application. 2.) Public hearing on revised subdivision of Section I & II (resubdivision). . . ." After further correspondence and contact between the plaintiff and defendant, the former submitted, on April 14, 1977, the new application, marked "final," for approval of the subdivision known as Scarborough Estates, Section II. To "withdraw" has been defined to mean "to eliminate from consideration"; Webster, Third New International Dictionary; the evidence amply justifies such a conclusion here.

The plaintiff argues that, under General Statutes § 8-26, its right to the original subdivision became "vested" on January 15, 1976. See, e.g., *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 71, 441 A.2d 68 (1981). This claim merits little discussion. If we assume without deciding that it acquired such a "vested right," its conduct

referred to above demonstrates that it withdrew any claim to such a right. Vested rights are not immutable; see *In Re Marriage of Bouquet,* 16 Cal. 3d 583, 592, 546 P.2d 1371 (1976); they may be relinquished.

The plaintiff argues that our construction of General Statutes §§ 8-26 and 8-26d in *Viking Construction* and *Gervasi,* supra, demonstrates that it had a clear legal right to the issuance of the certificate of approval and thus to a mandamus. *Finn* v. *Planning & Zoning Commission,* 156 Conn. 541, 244 A.2d 391 (1968), upon which the plaintiff also relies, was decided before the passage of § 8-26d, but did decide that the sixty day period then in § 8-26 within which a commission "shall approve, modify and approve, or disapprove any subdivision application . . ." was mandatory. *Finn* v. *Planning & Zoning Commission,* supra, 544. In both *Viking Construction* and *Gervasi,* we held that the failure of the commission to act on a subdivision application within the statutory sixty-five day period worked an approval by operation of law and a mandamus was ordered. See *Gervasi* v. *Town Plan & Zoning Commission,* supra, 454; *Viking Construction Co.* v. *Town Planning Commission,* supra, 247–48.

*Finn,*[16] *Viking Construction* and *Gervasi* are all factually distinguishable from the case at hand. *Finn* was an appeal from the action of the defendant commission in adopting subdivision regulations alleging that its action was arbitrary and illegal in

[16] *Finn* v. *Planning & Zoning Commission,* 156 Conn. 541, 244 A.2d 391 (1968), did not involve an application for a mandamus as did *Viking Construction Co.* v. *Town Planning Commission,* 181 Conn. 243, 435 A.2d 29 (1980), and *Gervasi* v. *Town Plan & Zoning Commission,* 184 Conn. 450, 440 A.2d 163 (1981).

that the regulations were adopted in violation of General Statutes §§ 8-25 and 8-26 and that the time limitations prescribed in them were illegal. In that case we struck down, as violative of the General Statutes, the regulations insofar as they purported to extend beyond the permissible period of sixty days, the time between the submission of the application and the decision of the commission. *Finn* v. *Planning & Zoning Commission,* supra, 544. In *Viking Construction,* citing *Finn,* we said that General Statutes §§ 8-26 and 8-26d "establish a definitive timetable during which planning and zoning commissions must act." *Viking Construction Co.* v. *Town Planning Commission,* supra, 246. We rejected the defendant commission's contention that the phrase "officially received," which was contained in General Statutes § 8-26d (Rev. to 1977), gave the commission discretion to determine when "it wishes to receive a subdivision application . . ." and held that the statutory timetable, under the circumstances of the case, effected the approval of the subdivision plan by operation of law. Id., 247–48. In *Gervasi,* in finding error in the denial of a mandamus, we remanded with direction to render a judgment ordering the defendant commission to issue the requested certificate approving the application. *Gervasi* v. *Town Plan & Zoning Commission,* supra, 455. In that case we held, citing *Viking Construction* and the statute, that where the defendant commission failed to follow the court's order by timely reconsidering the application, it had been approved by operation of law long before the commission purported to disapprove it. *Gervasi* v. *Town Plan & Zoning Commission,* supra, 454–55.

None of these three cases involved an application that was withdrawn and followed by a new

application with the latter actively pursued. None involved a demand for a certificate of approval under the statute on the original application after it was withdrawn, with a new one filed and denied. None involved any fact pattern related to the unique circumstances of this case that could serve as a rational predicate for applying the statutory timetables construed therein to require the result sought by the plaintiff.

The plaintiff also claims that it never would have withdrawn the original application had it known about the approval by operation of law. In an explanation of his failure to make demand for the certificate earlier, DeMelis, the plaintiff's president,[17] argues that, prior to the summer of 1977 when he consulted counsel, he had no knowledge that the original subdivision application had been approved by operation of law. In addition, the plaintiff also claims that Hayes, its engineer, "never even knew the plaintiff had an approved subdivision by operation of law . . . ." This argument is not persuasive. The plaintiff was charged with knowledge of the law. See *Pallman* v. *East Haven*, 135 Conn. 593, 594, 67 A.2d 560 (1949); *Silberman* v. *McLaughlin*, 129 Conn. 273, 279, 27 A.2d 634 (1942); *Longwood Homes, Inc.* v. *New Castle County*, 349 A.2d 19, 21 (Del. Super. 1975) (construction company dealing with real property is deemed to have been aware of statutes relating to county's exercise of its police power concerning construction and service of sewers); *Gignilliat* v. *Borg*, 131 Ga. App.

[17] It would appear that Mr. DeMelis was not newly in the field as is evident in his counsel's demand letter of June 2, 1977, to the defendant in which the following is said: "My client, Mr. DeMelis, has built a reputation as a developer with a keen sense of the public interest. We are as interested as you in developing a subdivision which will be a credit to the Town and to M & L Homes."

182, 183, 205 S.E.2d 479 (1974) (a person is presumed to know what zoning regulations do or do not permit); *Young* v. *Cities Service Oil Co.,* 33 Md. App. 315, 323, 364 A.2d 603 (1976) (a corporate being, as well as a person, is chargeable with knowledge of the law); *Mills* v. *Manchester,* 109 N.H. 293, 295, 249 A.2d 679 (1969) (buyers of property are charged with knowledge of zoning regulations); 7 McQuillin, Municipal Corporations (3d Ed. Rev.) § 24.505. In pointing out that the plaintiff's claimed lack of knowledge does not avail it, we note that the long passage of time before it made demand for the certificate of approval is certainly not of controlling importance, but is one factor that may be considered. Cf. *Silberman* v. *McLaughlin,* supra, 279.

"Mandamus is an extraordinary remedy designed to enforce the performance of a plain positive duty, and, as such, the writ will properly issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled." *Gerrity* v. *Bisciglia,* 178 Conn. 235, 238, 423 A.2d 871 (1979); see *Kosinski* v. *Lawlor,* 177 Conn. 420, 426, 418 A.2d 66 (1979); *State ex rel. Levy* v. *Pallotti,* 133 Conn. 334, 342, 51 A.2d 136 (1947); *State ex rel. Shelton* v. *Edwards,* 109 Conn. 249, 253, 146 A. 382 (1929); 52 Am. Jur. 2d, Mandamus § 31. "Mandamus neither gives nor defines rights which one does not already have. It commands the performance of a duty .... It is an expeditious remedy to protect a clear legal right." *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 518, 356 A.2d 109 (1975). The party who seeks the performance of the duty has the burden of establishing his clear legal right to its performance. *Kosinski* v. *Lawlor,* supra; *Stolberg* v. *Caldwell,*

175 Conn. 586, 612, 402 A.2d 763 (1978); *Simmons* v. *Budds,* 165 Conn. 507, 516, 338 A.2d 479 (1973), cert. denied, 416 U.S. 940, 94 S. Ct. 1943, 40 L. Ed. 2d 291 (1974); 52 Am. Jur. 2d, Mandamus § 466; 55 C.J.S., Mandamus § 286; see also *Kerr* v. *United States District Court,* 426 U.S. 394, 403, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976). "Although the remedy by mandamus is at law, its allowance is governed by equitable principles . . . ." *Pape* v. *McKinney,* 170 Conn. 588, 596, 368 A.2d 28 (1976); *United States* v. *Dern,* 289 U.S. 352, 359, 53 S. Ct. 614, 77 L. Ed. 1250 (1933); *Duncan Townsite Co.* v. *Lane,* 245 U.S. 308, 311–12, 38 S. Ct. 99, 62 L. Ed. 309 (1917); *Gormley* v. *Panuzio,* 166 Conn. 1, 2, 347 A.2d 78 (1974); 52 Am. Jur. 2d, Mandamus § 32. "In mandamus, the factual situation existing at the time the writ is to issue governs. *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 424, 52 A.2d 636 [1947]; *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 155, 35 A. 24, 421 [1896]." *Gormley* v. *Panuzio,* supra.

Applying these principles to the circumstances of this case as set out in this opinion, we find no error in the trial court's refusal to issue the writ of mandamus sought by the plaintiff. Those circumstances hardly need repeating here although we do observe that the plaintiff did not demonstrate that it had a clear legal right to the certificate of approval when it was sought.

There is no error.

In this opinion the other judges concurred.