[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by taxpayers seeking a writ of mandamus to order the defendant Town of West Hartford "to instruct the Town Clerk to hold a referendum" pursuant to a petition filed in May, 1991 to repeal a resolution adopted by the West Hartford Town Council on April 23, 1991 which authorized a private contract for sanitation CT Page 10375 services. This matter was heard in this court on February 2, 1995, and thereafter briefs and reply briefs were filed by agreement through April 19, 1995 and thereafter continued to May 10, 1995 for oral argument on the law, at which time the parties waived such oral argument.
Plaintiffs claim in their second revised complaint that the resolution adopted on April 23, 1991 was in fact an ordinance, that it was subject to a petition for referendum under Chapter XI Section 4 of the West Hartford Town Charter that early in May, 1991, more than 6000 electors of West Hartford including the plaintiffs filed a petition with the Town clerk requesting the repeal of the resolution; that thereafter the West Hartford Town Council refused to act on the petition by either repealing the resolution or in the alternative holding a referendum required by Chapter XI Section 5 of the West Hartford Town Charter, and thereafter entered into a contract for sanitation services.
The plaintiffs claim they have no adequate remedy at law and seek a writ of mandamus ordering the Town Council to instruct the Town Clerk to hold a referendum in accordance with the charter.
 I
The parties stipulated at trial that petitions filed with the town clerk between May 10 and May 21, 1991 were proper in form under Section 4b of the Charter and contain signatures numbering in excess of seven percent of the electors and that all such signatures were those of taxpayers of the Town as of the time this action was instituted in June 1991.
 II
There are two issues involved in this case first, whether the resolution adopted by the Town Council of West Hartford on April 23, 1991, was subject to referendum under Article XI, Sec. 4 of its Charter and secondly, if it was subject to referendum, is the remedy of Mandamus appropriate at this time.
III
CT Page 10376
Before analyzing these issues it is noted that underlying the background of this is the situation of the town employees who were providing the sanitary services for the town under a union contract prior to the resolution of April 23, 1991 and up to the time the Town entered a contract for the private furnishing of sanitation services. The parties stipulated in this regard, that the Town in fact has been utilizing private services under a contract since July, 1991, that in 1991 and 1992 the town budget eliminated forty employees in the sanitation division and four employees in the mechanical division; that under the new contract trash of residents was picked up once a week as had been the case prior to the new contract, and that all town employees who were laid off in connection with the new contract were covered by the collective bargaining agreement between the union and the Town and were terminated in accord with the collective bargaining agreement and that the Town and the Union had negotiated additional benefits for these discharged employees.
 IV
The West Hartford Town Charter provides in Chapter XI "Initiative and Referendum" § 4 "Referendum, power and scope",
 The electors shall have the power to approve or reject at a referendum as herein provided any ordinance or other measure passed by the council except the following:
 (a) An ordinance or resolution appointing or removing officials, specifying the compensation of hours of work of officials or employees, or relating to the council's action and authority when the council is acting in its capacity as the zoning authority of the town;
 (b) An ordinance authorizing the issuance of bonds or notes which ordinance shall be subject to referendum only in accordance with chapter VII, section 8 CT Page 10377 of this charter;
 (c) The budget ordinance, or substitute budget ordinance, which ordinances shall be subject to referendum only in accordance with chapter VII, section of this charter;
 (d) The resolution establishing the tax rate, which resolution shall not be subject to referendum;
 (e) Any other matter arising out of proceeding undertaken pursuant to chapter VII, section 11 of this charter, which matters shall not be subject to referendum. Ordinances or other measures submitted to the council by initiative petition as provided in section 1 of this chapter and passed by the council with or without change shall be subject to a referendum in the same manner as other ordinances or measures.
Chapter XI, § 5 of the West Hartford Town Charter entitled "Referendum, petition procedures, suspension or ordinance" provides:
 Within thirty days after the enactment by the council of any ordinance or other measure which is subject to referendum, a petition substantially in the form prescribed in section 7 of this chapter, and signed in ink or indelible pencil by not less than seven percent of the electors as determined by the last — compiled registry list may be filed with the town clerk requesting that any such ordinance or other measure be either repealed or submitted to a vote of the electors. The town clerk shall determine the sufficiency of the petition and, if said petition is found to be sufficient, shall so certify to the council within seven days after receipt of the petition by him. If the council fails to repeal such ordinance or other measure CT Page 10378 the question shall be submitted to a referendum of the electors of the town conducted in accordance with the relevant general statutes, such referendum to be held within sixty days after certification by the town clerk. Upon the filing of a sufficient petition, the ordinance or measure shall remain without effect until the electors vote on the question as above provided.
On April 23, 1991, the West Hartford Town Council passed an "item" entitled "Resolution Authorizing the Town Administration to Enter into a Contract for the Provision of Sanitary Services." The full text of the "Resolution" is as follows:
 RESOLUTION AUTHORIZING THE TOWN ADMINISTRATION TO ENTER INTO CONTRACT FOR THE PROVISION OF SANITARY SERVICES
 WHEREAS, the Town has competitively bid the provision of refuse collection, refuse transfer and recycling services; and
 WHEREAS, the lowest responsible bidder has been identified and the bid has been carefully reviewed and verified with the vendor; and
 WHEREAS, the lowest responsible bidder is able to provide the same level of sanitation services currently provided to West Hartford residents, and interviews with current and previous customers have verified this; and
 WHEREAS, a cost analysis performed by the Town has determined that, with certain assumptions regarding future costs tied to the Consumer Price Index (CPI), the contract with the lowest responsible bidder will reduce sanitation service costs by over $7,000,000 over the next six years; and
 WHEREAS, the adopted budget for fiscal year 1991-92 will include $541,428 in reduced property taxes as a result of contracting with the lowest responsible bidder; CT Page 10379
 NOW THEREFORE BE IT RESOLVED by the Town Council of the Town of West Hartford that the Town Administration is hereby authorized to execute a contract with the lowest responsible bidder for the provision of refuse collection, recycling and refuse transfer services effective July 1, 1991 in accordance with the contract bidding documents.
 NOW THEREFORE BE IT FURTHER RESOLVED that the Town Council directs the Town Manager not to enter into a Memorandum of Understanding with SEIU Local 531, Sanitation Unit.
Plaintiffs claim that this enactment even though styled a "resolution" was an ordinance within the meaning of Chapter XI, § 4 of the Town Charter because it explicitly authorized the Town Administration to execute a contract with the lowest bidder and not to enter into any agreement with the union; in effect it was a formal decision to privatize the Town's sanitary services.
Defendants contend that the resolution was not at ordinance but even if it were an ordinance (1) that the subject matter of the referendum exceeded the power of the electorate; (2) the referendum could have no impact on how the Town provides sanitation services and therefore could only be advisory and (3) the resolution deals with an administrative matter not properly subject to referendum.
 V
On April 23, 1991 the same night the resolution was adopted the Town Council adopted its budget for the 1991-92 fiscal year which contained an allocation of $3,556,232 for town provided sanitation services followed by the following paragraphs:
 Bid proposals contracting out for municipal sanitation services were received in March. A comparative analysis showed that the Town could save $541,420 in fiscal year 1991-92 and over $7 million over the six-year contract period by allowing a private contractor to perform the same CT Page 10380 services that were now being performed in-house.
 The adopted Sanitation Division budget for fiscal year 1991-92 reflects a shift from a municipal collection system to private refuse collection. Refuse collection, bulky waste and dumpster pickup will operate on the same schedule and at the same service levels as currently provided. A separate recycling program will be included for newspaper, corrugated cardboard, glass and metal food and beverage containers and plastic containers. Transfer station services will be redefined as proposed in the Town Manager's budget.
 TOWN COUNCIL ACTION: Eliminated municipal sanitation services and engaged a private refuse collection contractor. The impact on the Sanitation budget is described below:
 Personal services were reduced by $1,152,203, eliminating an additional 29 full-time positions. A total of 2,500 part-time hours for a Transfer Station Attendant were included to staff the relocated and reconfigured transfer station operation ($23,400).
 Non-Personal expenses were increased by $1,242,808 to reflect the additional $1,447,089 in contractual services for private collection services as well as elimination of expenses for such things as vehicle parts and fuel, meals, uniforms and uniform maintenance.
 Capital outlay expenses were decreased by $143,750 to reflect the elimination of the (2) Roll-off hoist units ($50,000), the (13) front-loading refuse dumpsters ($13,750) and the transfer of the tub grinder ($80,00 [$80,000]) to the Streets activity.
 Revenues were also increased by $233,000 to reflect a State recycling grant ($133,000) and $100,000 in estimated income from the sale of refuse collection equipment. CT Page 10381
These provisions, which were actually part of the annual budget set forth in great detail the decision of the town to move from direct furnishing of sanitation services to a privatization of those services through a contract put out to bid, with the resulting elimination of town employees, and projected savings both on an annual budget basis and for capital expenditures. This budget was adopted prior to consideration of the resolution in question.
Whatever the impact of the resolution it is clear that repeal of the resolution could have no impact on the budget and that the substantive issues involved in this case, namely the ability of the Town to contract for sanitation services could only be affected by amendment or repeal of the budget itself.
Chapter VII, § 11 of the Charter contains special provisions for the repeal of the budget ordinance following a petition of six percent of the electors, but this procedure was not invoked by the plaintiffs.
 VI
Plaintiff's claim that even if the referendum was advisory and could not affect the budget, they are still entitled "to have the electorate of West Hartford voice their opinion on the privatization of sanitary services."
Plaintiffs rely on General Statutes § 7-148(b) which states in part:
 (b) Ordinances. Powers granted to any municipality under the general statutes or by any charter or special act, unless the charter or special act provides to the contrary, shall be exercised by ordinance when the exercise of such powers has the effect of:
 (1) establishing rules or regulations of general municipal application, the violation of which may result in the imposition of a fine or other penalty; or
(2) Creating a permanent local law of general CT Page 10382 applicability.
They claim that this statute when read in conjunction with General Statutes § 7-148(c)4(H) which is the statutory grant of power to a municipality to provide for and regulate trash collection makes the resolution of April 23, 1991, an ordinance subject to referendum under the town charter. The ordinance required by the statute is satisfied by Chapter 94 of the West Hartford Code of Ordinances which sets forth the permanent rules for classification of refuse, hours of collection and disposal, recycling and other collector requirements. We reject the contention that these statutes require the resolution to be treated as an ordinance for referendum purposes in West Hartford.
 VII
Finally even if the resolution fell under the provisions of Chapter XI, § 4 referendum provisions, the writ of mandamus would be inappropriate at this time. Mandamus is an extraordinary remedy and will ordinarily not be granted where the enforcement of a right will be of no substantial or practical benefit to the plaintiffs Pape v.McKinney, 170 Conn. 588 (1987). We do not believe that an advisory referendum held at this time on the Town's decision to privatize its refuse collection five years earlier would have any substantial or practical benefits to the plaintiffs. Further our Supreme Court has ruled in a similar mandamus case that he initiative provisions of the West Hartford Town Charter cannot be used to initiate budget-related ordinances. West Hartford Taxpayers'Association v. Streeter, 190 Conn. 736 (1983).
For the above reasons, plaintiff's application for mandamus is denied.
Wagner, J.