UNIVERSITY REALTY, INC., ET AL. *v.* PLANNING COMMISSION OF THE CITY OF MERIDEN
(3348)

DUPONT, C.P.J., HULL and BORDEN, Js.

Argued January 8—decision released April 16, 1985

*Marjorie H. Drake,* for the appellant (defendant).

*William T. Shea,* with whom, on the brief, was *Antoinette E. Grenier,* for the appellees (plaintiffs).

BORDEN, J. The defendant, the planning commission of the city of Meriden, appealed from the judgment of the trial court sustaining the appeal of the plaintiffs[1] from a decision of the defendant. That decision had denied the plaintiffs' application for site plan approval to use certain property as a retail outlet for gasoline products, and for retail stores, an automobile service center and a restaurant. The trial court held that the decision of the defendant was not rendered within the time constraints of General Statutes § 8-3 (g) and 8-7d (b), that the plaintiffs had not consented to an extension of those time constraints and that, therefore, the certificate of approval must issue.

The defendant filed a petition for certification to appeal to this court under General Statutes § 8-8 (g)[2] and Practice Book § 3137.[3] We granted the petition on

---

[1] The plaintiffs are the corporation which owns the property in question and its principal, who was the applicant to the defendant.

[2] General Statutes § 8-8 (g) provides, with respect to zoning appeals decided by the Superior Court: "There shall be no right to further review except to the appellate court by certification for review, upon the vote of two judges of the appellate court so to certify and under such other rules as the judges of the appellate court establish. The procedure on such appeal to the appellate court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal . . . ."

[3] Practice Book § 3137, made applicable to this court by Practice Book § 2000, provides in pertinent part: "BASIS FOR CERTIFICATION. Certification by the [appellate] court on petition by a party . . . is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor. The following, while neither

the basis that its reasons stated substantial claims for review under Practice Book § 3137 (1) and (4). See footnote 3, supra. Upon full consideration, we find no error.

The following chronology of events preceding the plaintiffs' application and the facts concerning it are not in dispute. In December, 1982, the zoning board of appeals (ZBA) of the city approved an application for a certificate to use the property for the sale of gasoline and related products. See General Statutes (Rev. to 1981) §§ 14-319 and 14-321. This approval was subject to certain conditions, one of which was approval from the defendant of the site development of the property as required by the city zoning regulations. In July and October, 1983, the applicant secured approval from the city's flood and erosion commission and inland wetlands and watercourse commission.

Meanwhile, on July 6, 1983, the plaintiffs filed with the defendant their application for a certificate of approval of a site plan for the proposed construction of the gasoline station and retail building on the property. The next regularly scheduled meeting of the defendant was July 13, 1983. The defendant first considered the application at its meeting of August 10, 1983. That meeting was preceded, on August 9, 1983, by a letter from the defendant's staff to the plaintiffs' attorney detailing a number of staff comments on the site plan and, on August 10, 1983, by a staff agenda

controlling nor fully measuring the court's discretion, indicate the character of the reasons which will be considered: (1) Where the court below has decided a question of substance not theretofore determined by the supreme court or has decided it in a way probably not in accord with applicable decisions of the supreme court. (2) Where the decision under review is in conflict with other decisions of the court below. (3) Where the court below has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the [appellate] court's supervision. (4) Where a question of great public importance is involved."

memorandum to the defendant outlining the procedural history of the application and several of the comments contained in the August 9, 1983 letter to the plaintiffs' attorney. At the August 10, 1983 meeting the staff's concerns were noted, the plaintiffs' attorney explained the ZBA application, and he requested tabling the application. The defendant tabled the application.

The next meeting of the defendant was on September 12, 1983. The city planner reported that the staff had completed its review and forwarded its comments to the plaintiffs, that the plaintiffs addressed those comments in a revised site plan,[4] but that some staff concerns remained. The city engineer also reported a concern. The defendant tabled the application.

The next and final meeting of the defendant was on October 12, 1983. After lengthy discussion, the defendant denied the plaintiffs' application on the grounds that the proposal created a potential traffic problem,

---

[4] Although the defendant asserts in its brief that the revised plan was submitted at the defendant's September 13, 1983 meeting, the documents and the record create some confusion about this date. The first sheet of the plaintiffs ultimate plan, which was the subject of the defendant's ultimate denial, indicates an original date of July 1, 1983, with revisions of August 25, 1983, September 8, 1983, September 30, 1983, and October 13, 1983, and a receipt stamp of the planning department of October 11, 1983. The second sheet indicates an initial date of September 30, 1983, with notes added on October 11, 1983, and a receipt stamp of October 11, 1983. The third sheet indicates an initial date of July 1, 1983, with notes added on September 8, 1983 and October 11, 1983, and a receipt stamp of October 11, 1983. The final four sheets all indicate initial dates in April and May, 1983, and receipt by the planning department on July 6, 1983. To confuse the matter further, there is a covering letter from the plaintiff's engineer to the city planner, dated October 3, 1983, and receipt stamped October 3, 1983, referring to a site development plan revised to reflect comments made by the city planner and engineering department at a recent meeting of the plaintiffs' engineer. Thus, there is some doubt about precisely when a revised plan was submitted by the plaintiffs and what it constituted. Because of the view we take of the case, it is not necessary to resolve this issue. It is clear, however, that the revisions were made in response to suggestions by the defendant's staff and the city's engineering department.

that it might impair the welfare and safety of the public, and that it violated the general purpose of the zoning ordinance to promote health, safety and general welfare.

The parties do not dispute that the plaintiffs' application was governed by General Statutes §§ 8-3 (g),[5] 8-7d (b) and 8-7d (c).[6] These sections provide that in

---

[5] General Statutes Section 8-3 (g) provides that, when a municipality's "zoning regulations . . . require that a site plan be filed with the [planning] commission . . . to aid in determining the conformity of a proposed building, use or structure with . . . such regulations . . . *[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d.*" (Emphasis supplied.) Section 8-7d (b) applies to this case, because approval of the plaintiffs' site plan was the only remaining requirement for their proposed building and use.

[6] General Statutes § 8-7d provides: "HEARINGS AND DECISIONS. TIME LIMITS. DAY OF RECEIPT. (a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal.

"(b) Whenever the approval of the site plan is the only requirement to be met or remaining to be met under the zoning regulations for a proposed building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods, or may withdraw such plan.

"(c) For purposes of subsection (a) or (b) of this section, the day of receipt of a petition, application, request or appeal shall be the day of the next regularly scheduled meeting of such commission or board, immediately following the day of submission to such board or commission or its agent of such petition, application, request or appeal or thirty-five days after such submission, whichever is sooner. If the commission or board does not maintain an office with regular office hours, the office of the clerk of the munic-

cases of this type, where approval of a site plan is all that is required for a proposed building and use, the decision on the application for approval of the site plan "shall be rendered within sixty-five days after receipt of such site plan." General Statutes § 8-7d (b). The applicant may withdraw the plan or consent to extensions of the sixty-five day period, but the total period within which the decision must be made cannot exceed two further sixty-five day periods. Id. The "day of receipt of a[n] . . . application" is computed as the "day of the next regularly scheduled meeting of such commission . . . immediately following the day of submission to such . . . commission or its agent . . . ." General Statutes § 8-7d (c).

The trial court reasoned, and we agree, that the sixty-five day clock began on July 13, 1983, which was the date of the first regularly scheduled meeting of the defendant following July 6, 1983, the date of receipt of the plaintiffs' application by the defendant or its staff. The court also reasoned, and we agree, that the facts in this record did not stop the running of that clock and that, therefore, the denial of the application by the defendant on October 12, 1983, was untimely under General Statutes § 8-3 (g).

I

The defendant first argues, relying on General Statutes § 8-7d (b) and on *Vartuli* v. *Sotire,* 192 Conn. 353, 472 A.2d 336 (1984), that the trial court erred in rejecting its claim that the submission of a revised site plan triggered a new sixty-five day period within which the defendant was empowered to act. See footnotes 4 and 6, supra. We disagree.

ipality shall act as the agent of such commission or board for the receipt of any petition, application, request or appeal.

"(d) The provisions of subsection (a) of this section shall not apply to any action initiated by any zoning or planning and zoning commission regarding adoption or change of any zoning regulation or boundary."

The defendant's argument focuses on the language of General Statutes § 8-7d (b) that "a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan." This focus ignores, however, other language of the statute and its history, which require the contrary conclusion that, in measuring when the clock begins to run, the statute focuses on receipt of the application, not the accompanying site plan.

Section 8-7d, as it presently exists and insofar as is relevant to this case, is the product of No. 77-450 of the 1977 Public Acts and No. 78-104 of the 1978 Public Acts. Those acts must be read so as to harmonize all their parts to make sense; *Shelby Mutual Ins. Co. v. Della Ghelfa,* 3 Conn. App. 432, 438, 489 A.2d 398 (1985); and with a recognition that the legislature acted with cognizance of existing law. *Warner* v. *Leslie-Elliot Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984).

Section 4 of Public Acts 1977, No. 77-450 created subsections (a), (b) and (c) of General Statutes § 8-7d. See footnote 6, supra. The newly-fashioned subsection (a) provided that, except as provided in subsection (b), where a hearing is required on a matter before a zoning authority "such hearing shall commence within sixty-five days *after receipt of such . . . application . . . .* " (Emphasis added.) Subsection (b) addressed the situation where only site plan approval is required, and provided for "[a] decision on an application for approval of a site plan . . . within sixty-five days *after receipt of such site plan.*" (Emphasis added.) Subsection (c) furnished the measuring device for both subsections (a) and (b) by providing, inter alia, that *"the date of receipt of [an] . . . application . . .* shall be the date of the next regularly scheduled meeting of such commission . . . *immediately following the official*

*receipt by such . . . commission of such . . . application . . . ."* (Emphasis added.)

To harmonize the somewhat contradictory language of subsection (b) with subsection (c), and the three subsections with each other, it is necessary to read the reference in subsection (b) to "receipt of such site plan" as a repetition of the earlier reference in the same sentence to the receipt of the "application for approval of a site plan." It would have made little legislative sense for the legislature, in the same public act, to set up two differing temporal measurements for such closely related zoning matters. This is particularly so because local zoning authorities are typically composed of laypersons without legal training and, therefore, are better served by legislative directions which are uniform and definite.

It is of further significance that Public Acts 1977, No. 77-450 was enacted after the decision in *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 546, 244 A.2d 391 (1968), in which the Supreme Court held that the sixty-five day time constraint in the subdivision statute; General Statutes § 8-26; "relates to the application rather than to the maps or plans which are incidental thereto." There is no reason to suppose that the legislature meant otherwise in General Statutes § 8-7d, and there is no indication in the legislative history of Public Acts 1977, No. 77-450 of an intent to depart from *Finn.* 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2511–12; 20 S. Proc., Pt. 7, 1977 Sess., pp. 2767–69; 20 S. Proc., Pt. 8, 1977 Sess., pp. 2999–3000. Public Acts 1978, No. 78-104, § 1, further refined General Statutes § 8-7d (c) by changing the reference to "official receipt" by the commission to "day of submission" to the commission "or its agent . . . . " We conclude, therefore, that, on the facts of this case, under General Statutes § 8-7d the sixty-five day period for the plaintiffs' application for site plan approval started to

run from July 13, 1983, which was the day of the next regularly scheduled meeting of the commission following the submission of the plaintiffs' application to the commission or its agent.[7]

Nor is the defendant's reliance on *Vartuli* v. *Sotire,* supra, persuasive. In that case, in which the Supreme Court held, inter alia, that the Coastal Management Act incorporates the mandatory time limits of General Statutes §§ 8-3 (g) and 8-7d (b), the court measured the sixty-five day period from the next regularly scheduled meeting of the local zoning authority following the submission of the revised *application.* Id., 355, 366. Thus, *Vartuli* is consistent with *Finn,* and with our reading of General Statutes § 8-7d.

## II

The defendant next argues that the plaintiffs' request to the defendant, on August 10, 1983, to table their application constituted consent to an extension of time under General Statutes § 8-7d (b). See footnote 6, supra. We disagree.

The trial court held that although consent to some extension of time was implicit in the tabling of the application, General Statutes § 8-7d (b) contemplates consent only to one or two periods of sixty-five days each, and that this consent was not to any such period. Our view of this claim of the defendant renders it unnecessary for us to consider whether General Statutes § 8-7d (b) permits consent by the applicant to periods less than sixty-five days.

---

[7] We do not dismiss the possibility that a revised site plan may be submitted to a zoning authority which differs so substantially from the original that it could itself constitute a revised application, triggering a new sixty-five day period so as to give the authority ample time to review it. This record, however, does not support such a finding. Since it does not contain the original site plan, we have no basis for such a comparison. Furthermore, the commission here did not rely on that ground for its denial of the plaintiffs' application.

The provision in General Statutes § 8-7d (b) that "[t]he applicant may consent to one or more extensions of such period" of sixty-five days, but no more than two such periods, is, like the sixty-five day requirement itself, "for the protection of the [applicant]." *Vartuli* v. *Sotire,* supra, 360. This is apparent from the fact that it vests solely in "[t]he applicant" the power to "consent to one or more extensions . . . ." General Statutes § 8-7d (b). It does not, as it might have, give the commission the power to extend the time even for one such period. Thus, we must construe the provision in the applicants' favor.

Furthermore, tabling of the application, albeit done at the plaintiffs' request, was an action of the commission. It was not, like consent or withdrawal, an action of the plaintiffs. The commission need not have acceded to the request; it could have denied or ignored it. Having itself tabled the application, it cannot convert its own parliamentary action into statutory consent by the plaintiffs. This is particularly so here, where the defendant's own minutes, supported by the rest of the administrative record, indicate that the plaintiffs' request to table was in response to the defendant's staff's comments on the application.

Under these circumstances, the plaintiffs' request to table was, by itself, too slim an evidentiary reed on which to hang a finding of consent. We note that, in a closely related context, the Supreme Court has "observe[d] that when consent for such an extension is given, prudence dictates that such consent be given in writing." *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 14, 202 A.2d 241 (1964). We thus affirm the trial court's conclusion on a basis different from that used by it, which we are free to do. *Bencivenga* v. *Zoning Board of Appeals,* 2 Conn. App. 384, 387, 478 A.2d 1049 (1984).

### III

We consider the defendant's final two arguments together. They are (1) that on September 13, 1983, by acquiescing in the further tabling of the application and agreeing to meet with the defendant's staff, the plaintiffs consented to an extension, and (2), citing *M & L Homes, Inc.* v. *Zoning & Planning Commission,* 187 Conn. 232, 445 A.2d 591 (1982), that by this acquiescence, and by failing to raise the issue of timeliness until more than four months after appealing to the court, the plaintiffs waived the legal claim of untimeliness.

Our earlier conclusion, that the plaintiffs did not consent to an extension by requesting that the defendant table the application, renders the defendant's first argument here an a fortiori case. As to the second argument, suffice it to say that the applicant's withdrawal of its subdivision application, which the Supreme Court found dispositive in *M & L Homes, Inc.* v. *Zoning & Planning Commission,* supra, is hardly analogous to the plaintiffs' conduct here. Nor can that conduct be viewed as supporting a finding of waiver. Cf. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* supra.

There is no error.

In this opinion the other judges concurred.