[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Summitwood Associates Phase IV (Summitwood), appeals the decision of the defendant, Planning Commission of the City of Meriden (Commission), denying the plaintiff's application for approval of a site plan.
The Commission acted pursuant to General Statutes §8-3(g) and the Meriden Zoning Regulations. Summitwood appeals pursuant to General Statutes § 8-8(b).
BACKGROUND
Summitwood is a Connecticut partnership which holds an option to purchase 12.70 acres of property on Sams Road in Meriden, Connecticut. (Complaint, March 17, 1995, paras. 1, 2). The property is part of a 500 acre tract of land owned by Meadow Haven, Inc. (Complaint, March 17, 1995, para. 1).
The Summitwood property is zoned as a Planned Development District (PDD) under the Meriden Zoning Regulations, Chapter 213-26.5. (Complaint, March 17, 1995, para. 3). The stated purpose of such districts "is to allow for diverse but integrated uses in a large, singularly controlled area to provide necessary housing and at the same time to further the economic base of the City by offering space for industrial and commercial expansion." (Return of Record [ROR], Item 45: Meriden Zoning Regulations, § 213-26.5.A). CT Page 4670
In November 1994, pursuant to Meriden Zoning Regulations § 213-26.5D(2), Summitwood filed a site plan application with the Commission to construct a thirty-six unit town house development on the property. (ROR, Item 37: Site Development Plan; Item 39: Application for a Certificate of Approval, 11/29/94). The site plan application proposed excavation of 625,000 cubic yards of trap rock from a naturally existing ridge located on the subject property. (ROR, Item 37: Site Development Plan; Item 28: Letter to John Netherton, Meriden Planning Commission, from Vincent J. McManus, 1/5/95, with attached engineering evaluation).
The Meriden Zoning Regulations delegate the site plan review function to the defendant Planning Commission. (ROR, Item 45: Meriden Zoning Regulations § 213-55). On February 17, 1995, the Commission held a special meeting to act on the application. (Supplemental ROR, Item 1: Transcript, 2/17/95, p. 1). Commissioners Arthur Geary, Roger DeZinno and Enrico Bucilli were the only commissioners in attendance. (Supplemental ROR, Item 1: Transcript, 2/17/95, p. 1). At the meeting, Commissioner Geary made a motion to deny the application. (Supplemental ROR, Item 1: Transcript, 2/17/95, p. 4). Commissioners Geary and Bucilli voted in favor of the motion to deny the application. Commissioner DeZinno voted against the motion. (Supplemental ROR, Item 1: Transcript, 2/17/95, p. 6). Notice of the denial of the application was sent to Summitwood on February 21, 1995, and was published in the newspaper as required by General Statutes §8-28.[1] (See ROR, Item 6: Letter from Dominick J. Caruso to Summitwood, 12/21/95).
Thereafter, on February 22, 1995, Summitwood's attorney wrote a letter to the Commission stating Summitwood's claim that the Commission failed to take legal action on the application because Commissioner Bucilli was not authorized to vote. Summitwood requested that the Commission issue an inferred approval of the site plan pursuant to General Statutes § 8-3(g). (ROR, Item 5: Letter from Guy R. DeFrancis to City of Meriden, 2/22/95). The Commission did not issue an inferred approval, and this appeal followed.
JURISDICTION
General Statutes § 8-8 governs appeals taken from a decision of a planning commission to the Superior Court. In order to take advantage of a statutory right of appeal, parties must CT Page 4671 comply strictly with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of an appeal. Id., 377.
1. Aggrievement.
General Statutes § 8-8(b) states that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located."
"Aggrievement falls within two broad categories, classical and statutory." (Internal quotation marks omitted). Cole v.Planning Zoning Commission, 30 Conn. App. 511, 514,620 A.2d 1324 (1993). Classical aggrievement requires a showing that the plaintiff has a specific, personal and legal interest in the subject matter of the agency's decision and that this interest has been specially and injuriously affected. Steeneck v.University of Bridgeport, 235 Conn. 572, 579, 668 A.2d 688
(1995). "The interest which supports aggrievement need not necessarily be an ownership interest." DeLeo v. EnvironmentalProtection Board, Superior Court, judicial district of Stamford, Docket No. 091028 (September 6, 1990, Nigro, J.), citing MysticMarinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493,400 A.2d 726 (1978).
A contract purchaser or a holder of an option to purchase has sufficient interest in a decision involving that property to prove aggrievement. Goldfeld v. Planning Zoning Commission,3 Conn. App. 172, 176-77, 486 A.2d 646 (1985) (option to purchase);Shapero v. Zoning Board, 192 Conn. 367, 376, 472 A.2d 345 (1984) (contract purchaser); see also Whitehead v. East Haven Planning Zoning Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 374158 (September 28, 1995, Booth, J.);West Hartford Interfaith Coalition, Inc. v. Town Council, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 501205 (August 26, 1992, Berger, J.,7 CSCR 1085); Baumert v. Zoning Board of Appeals, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 368906 (February 27, 1992, Schimelman, J., 7 CSCR 364).
Summitwood has an option to purchase the property which is the subject of the application to the Commission. Summitwood's CT Page 4672 option is sufficient to support aggrievement. Accordingly, Summitwood is aggrieved.
2. Timeliness and Service of Process.
The record reveals that the Commission published notice of its decision to deny the site plan application on February 23, 1995.[2] Summitwood commenced this appeal by service of process on the Chairman of the Commission and the City Clerk for the Town of Meriden on March 8, 1995. Accordingly, this appeal was commenced in accordance with General Statutes § 8-8(b) and (e).
ARGUMENTS
Summitwood filed its appeal on March 17, 1995. In its pretrial brief, filed on July 14, 1995, Summitwood contends that either the Commission did not have an adequate; number of members to act on the site plan application and that the vote was invalid, resulting in an inferred approval of the plan under General Statutes § 8-3(g), or, if the Commission's vote was valid, the reasons for the denial were insufficient.
With respect to the voting issue claims, Summitwood argues that Commissioner Bucilli's appointment to the Commission was not confirmed at the time of his vote. Therefore, Summitwood argues, the Commission did not have a quorum, a necessary predicate to effectuate a vote. Furthermore, Summitwood argues that even if a quorum was present, no action was taken since less than a majority of the membership voted on the application. Thus, Summitwood argues that the Commission failed to act on the application within the statutory period and the application was automatically approved under General Statutes § 8-3(g). Summitwood requests the Court to sustain its appeal and to order the Commission to issue an approval of the site plan application. (Complaint, March 17, 1995, p. 9).
On September 21, 1995, the Commission filed its pretrial brief.[3] In its brief, the Commission contends that Commissioner Bucilli was a valid member of the Commission at the time of the vote. In the alternative, the Commission argues that, if Bucilli was not a de jure member of the Commission, he was a de facto member and his vote was valid. The Commission maintains that, in any event, Summitwood waived its right to challenge Bucilli's qualifications because it failed to object to his vote CT Page 4673 at the time it was cast. Finally, the Commission maintains that Summitwood's site plan application does not conform to the Meriden Zoning Regulations and the denial of the application was proper.
DISCUSSION
1. Whether Summitwood May Seek an Inferred Approval and Raise Issues Regarding the Propriety of the Commission's Vote in an Administrative Appeal.
In this administrative appeal, Summitwood seeks to have the court direct approval of its site plan application under the automatic approval provision of General Statutes § 8-3(g). By doing so, Summitwood requires the court to address the issue of whether the claims it makes and the remedy it seeks are available in an administrative appeal under § 8.8 or required an action for mandamus. Summitwood contends that "[w]hile a mandamus action can be brought to direct approval of a site plan application as the result of an inferred approval . . . [inferred approval] can also be obtained in an appeal from the Commission's decision denying the application." (Plaintiff's Brief, July 14, 1995, p. 24).
There are several cases in Connecticut where a trial court, in a land use administrative appeal, ordered that a certificate of approval must issue by reason of failure to deny applications in a timely manner. Caron v. Inland Wetlands WatercoursesCommission, 222 Conn. 269, 271, 610 A.2d 584 (1992); PellitteriChevrolet, Inc. v. Zoning Board of Appeals, 21 Conn. App. 347,351, 573 A.2d 347 (1990); University Realty, Inc. v. PlanningCommission, 3 Conn. App. 556, 490 A.2d 96 (1985) (cited by Summitwood). None of the cases address the propriety of the procedure.
In a majority of Connecticut cases, however, an applicant seeking an inferred approval has filed an action for a writ of mandamus. See, e.g., Gelinas v. West Hartford, 225 Conn. 575,626 A.2d 259 (1993); M L Homes, Inc. v. Zoning PlanningCommission, 187 Conn. 232, 445 A.2d 591 (1982); SSM AssociatesLimited Partnership v. Planning Zoning Commission, 15 Conn. App. 561,545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196
(1989); Allied Plywood, Inc. v. Planning Zoning Commission, supra, 2 Conn. App. 506; Leo Fedus Sons v. Zoning Board, Superior Court, judicial district of New London at Norwich, CT Page 4674 Docket No. 094545 (April, 16, 1991, Leuba, J.), citing Vartuli v.Sotire, 192 Conn. 353, 472 A.2d 336 (1984) (stating that "[a] petition for writ of mandamus, rather than an administrative appeal, is the proper procedural remedy for obtaining a certificate of approval when an application has been approved by operation of law.")[4]; Tilcon Minerals v. Planning ZoningCommission, Superior Court, judicial district of New London at New London, No. 530666 (May 25, 1995, Purtill, J.,14 Conn. L. Rptr. 361) (holding that a writ of mandamus is the appropriate procedural device for addressing a claim that a site plan application was approved by operation of law where the legal notice published in connection with the hearing on the site plan application was insufficient); R. Fuller, Land Use Law and Practice, Vol. 9, 1993, § 23.6, p. 441 (observing that "[t]he customary remedy where the applicant obtains an inferred approval for failure of the agency to act within the statutory time limits is a writ of mandamus.").
It is questionable whether the Superior Court has jurisdiction to hear issues related to inferred approval in administrative appeals, an issue neither raised nor addressed in the cases relied upon by Summitwood. The Supreme Court has suggested in Merlo v. Planning Zoning Commission, 196 Conn. 676,681, 495 A.2d 268 (1985), that mandamus is in fact a necessary course of action for a plaintiff who claims the benefit of a mandatory approval sanction. T. Tondro, Connecticut Land Use Regulation, Second Ed., 1992, p. 631, citing Merlo v. Planning Zoning Commission, 196 Conn. 676, 681, 495 A.2d 268 (1985).
In Merlo, the plaintiff brought a mandamus action to compel the defendant; commission to issue a certificate of approval on a subdivision plan. Id., 677. She argued that the commission had failed to approve, modify and approve, or disapprove her plan within the period prescribed in General Statutes § 8-26d. Id., 677-78. At the same time, she filed an administrative appeal from the commission's decision. Id., 679. She alleged, "in the first count, the refusal of the board to issue the requested certificate of subdivision approval and, in the second count, that the commission had acted arbitrarily and illegally by failing to take the requisite statutory action within the time prescribed and by exceeding its authority in not recognizing that the plan complied with the subdivision regulations." Id., 679-80. At the time the Supreme Court rendered its decision in Merlo, the administrative appeal was pending in the trial court. CT Page 4675
On appeal, the commission raised "a jurisdictional issue concerning the propriety of mandamus as a remedy where there is a statutory appeal available . . . in which a plaintiff includes as one ground for relief essentially the same claim presented in the mandamus action." Id., 680. In deciding this issue, the court referred to its decision in Vartuli v. Sotire, supra, 192 Conn. 353, where it held that "the pendency of a zoning appeal, which could do no more than secure approval of the coastal site plan, which already had been approved by operation of law, did not preclude resort to the more expeditious and effective remedy of mandamus in order to vindicate the plaintiff's right to the immediate; issuance of a building permit." (Internal quotation marks omitted). Id., 681. The court stated that "[s]ince a court upon appeal from a decision of a planning commission has authority only to `review, revoke, modify or affirm an act of such commission,' it appears that ancillary relief in some form would be necessary where a commission refuses to certify a plan that has been approved." (Emphasis added.). Id., 681 n. 5.[5]
A determination that an applicant is not entitled to seek an inferred approval of a site plan application in an administrative appeal is consistent with the limited statutory right of appeal and with the nature of the writ of mandamus.
An administrative appeal exists only under statutory authority. Walls v. Planning Zoning Authority, supra, 176 Conn. 477. There is no provision in the General Statutes which permits an applicant to bring an "appeal" to compel issuance of a certificate of approval for a site plan which is approved by operation of law under § 8-3(g). General Statutes §8-8(b) provides a right of appeal to "any person aggrieved by a decision of a board. . . ." A claim that an inferred approval of a site plan has occurred is not based on a decision of a board, but rather is based on the board's failure to render a decision in a timely manner. Thus, a claim that inferred approval of a site plan has occurred under § 8-3(g) is not an appealable issue under § 8-8(b). Summitwood seeks redress arising out of the Commission's failure to comply with its demand for a certificate of approval, which should be raised in a mandamus action.[6]
"With respect to the extraordinary writ of mandamus, it is well established that an essential prerequisite for issuance of the writ is the absence of any other sufficient remedy." Merlo v.Planning Commission, supra, 196 Conn. 680. This implies that in CT Page 4676 those cases where the courts have issued writs of mandamus directing a zoning authority to issue a certificate of approval because a site plan has been approved by operation of law, no other remedy for obtaining such relief, such as an administrative appeal, was available to the applicant. See Laurel Park, Inc. v.Pac, 194 Conn. 677, 485 A.2d 1272 (1984). In Laurel Park, the court emphasized that "[w]e have frequently stated that when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.). Id., 685.
A writ of mandamus is available to enforce the performance of a ministerial duty if (1) the party applying for the writ has a clear legal right to have the duty performed, (2) the defendant has no discretion with respect to the performance of that duty; and (3) the plaintiff has no adequate remedy at law. Golab v. NewBritain, 205 Conn. 17, 20, 529 A.2d 1297 (1987); Par Developers,Ltd. v. Planning Zoning Commission, 37 Conn. App. 348, 352,655 A.2d 1164 (1995); Leech v. Gaetz, 31 Conn. Sup. 81, 85,322 A.2d 599 (Levine, J., 1973). The issues Summitwood raises regarding the validity of the Commission's vote and whether the Commission failed to act within the statutory period are issues within the scope of matters to be resolved under the tripartite test for mandamus.
For the foregoing reasons the court holds that matters concerning inferred approval, or more accurately the commission's refusal to find inferred approval are not properly raised in this appeal. Since the court lacks subject matter jurisdiction to consider inferred approval in this appeal all claims for relief relying on an entitlement to an order of inferred approval are dismissed.
2. Whether the Court Should Sustain Summitwood's Appeal on the Merits.
A. Arguments of the Parties.
1. Arguments Advanced by Summitwood.
In its appeal, Summitwood contends that the Commission's denial of the site plan application was based on two sections of the Meriden Zoning Regulations which do not constitute a proper basis for the denial. In its argument, Summitwood refers to the CT Page 4677 letter it received from Dominick Caruso (Caruso), dated February 21, 1995, which outlines the reasons for the Commission's denial. (ROR, Item 6).[7] Summitwood argues that the Commission relied on the general standards for Planned Development Districts in § 213-26.5 of the Regulations, instead of relying on the provisions which govern site plan approval in § 213.55. Summitwood argues that general objectives in site plan regulations can not be used as grounds for denying an application. To justify denial the application must violate specific zoning regulations.
The first section specified in Caruso's letter is § 213-26.5B(2).[8] Summitwood argues that the Commission could not rely on this section because it is merely a statement of objectives relating to rezoning of property. Furthermore, Summitwood contends that the Commission failed to state how the site plan failed to meet this provision. Summitwood argues that the next section specified in the letter, § 213-26.5D(3)(d),[9] is not a proper basis to deny a site plan application because it is merely a general development standard. Finally, Summitwood contends that Caruso added to his letter a claim of noncompliance with § 213-26.5C(2)(c),[10] an accessory use provision, which the court should not consider. According to Summitwood, the court is limited to a review of the collective statements of the Commission, of which Caruso was not a member. Summitwood also points out that a reason assigned by a Commission member or the planning staff after a vote cannot be considered by the court on appeal. In any event, Summitwood submits that the proposed excavation at the site is incidental to the development under the site plan and is clearly an accessory use under § 213-26.5C(2)(c).
Summitwood argues that the Commission is precluded from questioning the suitability of the site for the proposed uses because the property was determined to be suitable for such uses when it was zoned as a Planned Development District. Summitwood also maintains that the Commission could not properly rely on the zoning regulations noted in Caruso's letter because the regulations do not contain "known and fixed standards." (Plaintiff's Brief, July 14, 1995, p. 19). It is unclear, however, whether Summitwood is arguing that the Regulations themselves are invalid because no standard is set by them or that the Commission's reliance on the regulations to deny the site plan application was improper because the regulations are only statements of general objectives. CT Page 4678
2. Arguments Advanced by the Commission.
The Commission argues that Summitwood's application does not conform to the Meriden Zoning Regulations. According to the Commission, the varied uses allowed in a Planned Development District are only permitted when a development plan complies with the site plan regulations as well as PDD general development standards. With respect to the general standards contained in the PDD Regulations, the Commission argues as follows.
The Commission maintains that § 213-26.5D(3)(d) bars Summitwood from leveling the existing ridge to construct residential units which otherwise could be constructed to accommodate the ridge.[11] In addition, the Commission argues that Summitwood's plan violates § 213.26.5C(2) of the Regulations because the scope of the proposed excavation is beyond that permitted as an accessory use as a matter of law and fact.[12] Contrary to Summitwood's position, the Commission maintains that it is not barred from determining whether the proposed excavation is accessory simply because excavation is a permitted accessory use under the PDD regulations. The Commission contends that it and this Court must apply the Regulations and the definition of accessory use to Summitwood's application to determine whether the excavation is customary and incidental to the construction of the town houses.[13]
The Commission insists that the application does not meet the specific zoning requirements of the Regulations, § 213-55J, and therefore the denial was proper and the court need not consider whether the PDD Regulations are vague. Specifically, the Commission claims that Summitwood did not file an A-2 survey of the property or a topographic map illustrating the existing and proposed conditions of the property.[14] Thus, the Commission claims, the application was incomplete and the Commission was required to deny it. In addition, the Commission claims that the application violated §§ 213.55B(5), (7), and (8) of the Regulations regarding preservation of environmental land features.[15]
The Commission argues that Summitwood's claim that the general development standards of the PDD Regulations are vague and unenforceable is without merit. It is the Commission's position that the sufficiency of the standards must be viewed in the context of the purpose and scope of the Regulations. CT Page 4679 According to the Commission, the PDD Regulations were adopted in conjunction with Summitwood's owners to be applied to the Summitwood property. The Regulations permit a wide range of uses on a single parcel as long as the developer used the development standards to create a compatible integration of the proposed uses. Thus, the Commission argues, the requirement that "all structures and roads shall be planned to accommodate existing natural features, including topography and inland wetlands and watercourses" is not vague as it relates to Summitwood's application. Moreover, the Commission contends that Summitwood cannot "claim that the application of these standards [is] vague and meaningless when its master plan applies the regulation to the property, identifies the ridge as a significant topographical feature, and shows a development scheme which accommodates the ridge." (Defendant's Brief, September 21, 1995, p. 32). The Commission states that the natural topographic features of the property permit a variety of uses within the same parcel while allowing the uses to be physically separated. The Commission maintains that there is no ambiguity in the Regulations as they relate to this application.
Finally, the Commission asserts that to the extent the design standards are inadequate, the entire PDD regulation must be stricken and the property returned to an R-3 zone classification. The Commission posits that the city council's stated purpose for adopting PDD zoning was to encourage residential and economic development while maintaining the existing topographical and environmental features of the property. The Commission contests Summitwood's attempt to eliminate from the Regulations the design development controls.[16]
B. Reasons for the Site Plan Denial.
General Statutes § 8-3(g) states in part that "[a] decision to deny or modify a site plan shall set forth the reasons for such denial or modification." Summitwood argues that none of the reasons outlined in Caruso's letter is valid and the court should not search for or speculate upon other reasons which might support the Commission's decision. The Commission contends, however, that Caruso's letter was not adopted by it as an official, collective statement of its opinion and the court is required to search the record for reasons which support the denial of the site plan application. Evidently, the Commission advances this argument to insure that the court is not limited in its review to the reasons stated in Caruso's letter and CT Page 4680 Summitwood advances its argument to insure that the court is so limited.
In DeMaria v. Planning Zoning Commission, 159 Conn. 534,271 A.2d 105 (1970), the court held that "where a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." Id., 541. Thus, the DeMaria court concluded that the trial court erred in failing to confine its review to the reasons assigned by the commission for its action. Id., 541-42.
The DeMaria decision, however, was altered in Stankiewicz v.Zoning Board of Appeals, 15 Conn. App. 729, 546 A.2d 919 (1988), aff'd 211 Conn. 76, 556 A.2d 1024 (1989) (per curiam). InStankiewicz, the plaintiffs argued that because the trial court found no basis in the record for the board's stated reason for granting variances to the defendants, the court was obligated to sustain the appeal without further review of the record. Id., 732.[17] The Appellate Court rejected this argument and held that "[i]f the board fails to give the reasons for its actions,or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." (Emphasis added.). Id.[18]
 Stankiewicz has been interpreted to require a court to search the record to find support for a commission's decision not only when the commission fails to give a reason, but also when the reason it does give is improper. See T. Tondro, Connecticut Land Use Regulation, Second Ed., 1995 Cumulative Supplement, p. 146. "This is now a settled rule in local land use appeals." Bloom v.Zoning Board of Appeals, Superior Court, judicial district of Fairfield, Docket No. 0303192 (February 24, 1994, Levin, J.), rev'd on other grounds, 233 Conn. 198, 658 A.2d 559 (1995), citing DeBeradinis v. Zoning Commission, 228 Conn. 187, 199 n. 7,635 A.2d 1220 (1994); Samperi v. Inland Wetlands Agency,226 Conn. 579, 585, 628 A.2d 1286 (1993); Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 607-609, 569 A.2d 1094
(1990); see also Pike v. Zoning Board of Appeals, 31 Conn. App. 270,277, 624 A.2d 909 (1993) (stating that the trial court properly searched the record in making a determination that granting a variance would affect the comprehensive plan set forth CT Page 4681 in the zoning regulations, although the board did not cite this as a reason in denying the application); Cicero v. Planning Zoning Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0505454 (February 8, 1993, Sheldon, J.) (stating that even if a commission "does state reasons for its ruling, the task of the reviewing court is not necessarily limited to assessing the legal and factual sufficiency of those reasons; for if the only stated reasons are unclear or erroneous, the court must go on to decide if the record establishes any other valid basis for the ruling. ");Darwendshire Downs, Inc. v. Town of Willington, Superior Court, judicial district of Tolland at Rockville, Docket No. 45999 (March 13, 1992, Klaczak, J.) (stating that based on Stankiewicz
neither the lack of a stated reason nor an inadequate reason provides a ground, in and of itself, for dismissal.)
Since Summitwood's appeal will be dismissed if the stated reasons for the denial of the site plan are adequate, the court will begin its review of the Commission's denial of the site plan with the reasons articulated in Caruso's letter. It is noted at the outset that "[t]he burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. ZoningBoard of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
C. Adequacy of Commission's Stated Reasons for Denial of Summitwood's Site Plan Application.
General Statutes § 8-3(g) permits review of site plans "to determine consistency of the proposed development with specific provisions of the zoning regulations." T. Tondro, Connecticut Land Use Regulation, Second Ed. 1992, p. 181. Section8-3(g) provides that a site plan "may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetland regulations." A decision to deny a site plan application therefore "must be based on sufficiency of specific authority in the regulations to support a conclusion that the decision made is in accordance with the policies established . . . [by the commission]." T. Tondro, Connecticut Land Use Regulation, Second Ed., 1992, p. 188.
Summitwood advances the argument that the Commission could not properly consider the standards set forth in the PDD Regulations § 213-26, in denying the site plan because it is limited in its review to the standards set forth in the Regulations concerning site plan review, found in § 213-55. CT Page 4682 In addition, Summitwood argues that the Commission may not look beyond the question of whether the plan satisfies the site plan regulations because the use was designated as a permitted use in that zone.
The cases cited by Summitwood do not resolve the issue. InBarberino Realty Development Corp. v. Planning ZoningCommission, 222 Conn. 607, 610 A.2d 1205 (1992),[19] the court considered whether a site plan approved as part of an application for a special permit to construct elderly housing may be subsequently revised without conforming to the special permit regulations. Id., 612. The plaintiff argued that "review of the application for a revised site plan is confined to the regulations governing site plans because, once the special permit is granted, elderly housing is a permitted use on that site." Id. According to the plaintiff, the commission could deny the application for the site plan only if it failed to comply with the regulations governing site plans. Id. The court held that the revised site plan must be evaluated in light of the conditions set out in the special permit regulations, partly because the local zoning regulations in that case rendered site plans inseparable from the special permit application. Id., 614.
While Summitwood's argument is similar to the plaintiff's argument in Barberino, the cases are factually distinguishable and, to the extent that Barberino holds that the Commission may consider the special permit standards in reviewing site plans, the decision does not support Summitwood's position. Accordingly,Barberino is of limited applicability in the instant matter.
Summitwood also cites TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 577 A.2d 288 (1990) in support of its position. In TLC, the court considered "the criteria to be considered by the Branford planning and zoning commission in determining an application for site plan approval." Id., 528. The local authority denied the application, citing as a reason for the denial, the impact of the proposal on offsite traffic. Id., 528-29. After reviewing the Branford zoning regulations, the court held that the language of the regulations did not permit offsite traffic considerations to serve as a basis for denying the site plan application. Id., 529. The court noted that the text of the site plan regulation, which serves as the authority for the commission's rejection, made it clear that the general objectives cited therein "are to serve solely as the basis for requiring a modification of the proposed site plan. . . ." Id., CT Page 4683 532.
The court stated further that the applicant sought site plan approval for a use fully permitted under the regulations. Id. The court invoked the principle set out in Beit Havurah v. ZoningBoard of Appeals, 177 Conn. 440, 418 A.2d 82 (1979) that "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Id., 532-33.
The court later clarified its holding in TLC in Friedman v.Planning Zoning Commission, 222 Conn. 262, 608 A.2d 1178
(1992), emphasizing that it was the failure of the language in the regulations to permit inquiry into the offsite parking factors that; led to its decision in TLC. Id., 265.[20] In addition, the court held that the conclusive presumption raised in Beit Havurah applied to use "in general," not to a particular project. Id., 266. The Friedman court stated that neither TLC norBeit Havurah preclude inquiry into other factors that may affect the site when the applicable regulations permit such inquiry. Id.
On the basis of the foregoing, it appears that the Commission may consider the PDD standards in reviewing the site plan application if the regulations permit such an inquiry.
The Meriden Zoning Regulations do not limit the Commission's review of site plans to the standards articulated in § 213-55, nor do the Regulations prohibit the Commission from considering the development standards in § 213-26 in its review of a site plan application for development within a PDD.[21] "Generally, it is the function of a zoning . . . commission to decide within prescribed limits and consistent with the exercise: of its legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.). Schwartz v. Planning Zoning Commission, 208 Conn. 146,152, 543 A.2d 1339 (1988).
The other cases relied on by Summitwood relate more directly to what appears to be the crux of Summitwood's appeal; namely, that general objectives in regulations are not grounds for denying a site plan, and can be used only for modification and approval. Summitwood argues that the PDD general objectives do CT Page 4684 not contain known and fixed standards to guide a commission in reviewing site plans. Thus, Summitwood argues, even if the Commission could consider the standards in § 213-26.5, "it could not use these general provisions to deny a site plan which complied with the specific standards in the Zoning Regulations." (Plaintiff's Brief, July 14, 1995, p. 18).
The standard for determining the adequacy of subdivision regulations is "whether the criteria contained in the commission's regulations are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." (Internal quotation marks omitted.).Ghent v. Planning Commission, 219 Conn. 511, 517-18, 594 A.2d 5
(1991).[22] "Vague regulations which contain meaningless standards lead to ambiguous interpretations in determining the approval or disapproval of different subdivisions." Sonn v.Planning Commission, 172 Conn. 156, 162, 374 A.2d 159 (1976). "Adequate, fixed and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions, affecting the rights of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid." Ghent v. PlanningCommission, supra, 219 Conn. 517. In the present case, one of the PDD regulations relied on by the Commission in denying the application is the general development standard requiring that "[a]ll structures and roads shall be planned to accommodate existing natural features, including topography and inland wetlands and watercourse." Meriden Zoning Regulations, § 213-26.5D(3)(d).
In support of its position, Summitwood cites Kosinski v.Lawlor, 177 Conn. 420, 418 A.2d 66 (1979). In Kosinski, the defendant appealed from the issuance of a writ of mandamus requiring the municipal planning commission to issue a certificate of approval for a site plan. Id., 421. The commission declared that the plan met all applicable regulations and then denied the plan because it was a "poor use of the site." Id., 422. On appeal from the decision of the trial court sustaining the appeal, the commission claimed that the zoning regulations provided authority for denial of the plan on the ground stated. Id., 423. The court affirmed the trial court's finding that the section of the regulations relied on by the commission was "merely a broad legislative statement of purpose comparable to that found in § 8-2 of the General Statutes, and that, as CT Page 4685 such . . . [the section] did not provide any standards for use in approving or denying site plans." Id. The trial court determined that "the reason given for denying the application was vague, uncertain in meaning and provided no real guidance to the plaintiff as to the manner in which the plan failed to comply with the requirements of the regulations." Id. In the present case, the reason for the denial was not a broad statement of purpose, but was a specific requirement relating to the planning of roads in the district. Summitwood also cites Sowin Associatesv. Planning Zoning Commission, 23 Conn. App. 370, 580 A.2d 91
(1990), cert. denied, 216 Conn. 832, 583 A.2d 131 (1991), in support of its position. In Sowin, the commission denied the plaintiff's application for subdivision approval because of traffic congestion and safety concerns in the area of the proposed subdivision. Id., 373. On appeal, the commission argued, inter alia, that the plan did not conform to the town or state health and public safety regulations. Id., 376. The court rejected the commission's claim that the regulations supported its decision, holding that the "[g]eneral policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit." Id., 376, citingTLC Development, Inc. v. Planning Zoning Commission, supra,215 Conn. 530 n. 2.
Unlike the provisions in Sowin, § 213-26.5D(3)(d) of the Meriden Zoning Regulations are not broad statements related to public health and safety. Furthermore, Sowin, which cites extensively to TLC Development, Inc. v. Planning ZoningCommission, supra, 215 Conn. 527, was decided before the Supreme Court's decision in Friedman v. Planning Zoning Commission, supra, 222 Conn. 262.
At the Commission meeting on February 17, 1995, Commissioner Geary made a motion to deny Summitwood's application "based on the comments of staff on the conformance of the development." (Supplemental ROR, Item 1: Transcript, 2/17/95, p. 4). At the Commission meeting of February 14, 1995, Caruso addressed that aspect of the site plan which proposed removal of a 100 foot hill on the site to create a low detention area. (Supplemental ROR, Item 1: Transcript, 2/14/95, p. 9). He testified that the staff's concern "is with the regulations in that this is a special (district) and there are special responsibilities under this (district) and we think they are pretty clear and the main one that I'm talking to is Section [213-26.5D(3)(d)] and it says all CT Page 4686 structures of road shall be planned to accommodate existing natural features including topography . . . when you remove such a large physical natural feature, the removal is not working with it." (Supplemental ROR, Item 1: Transcript, 2/14/95, pp. 9-10). Caruso stated further "[w]e're talking about working with the topography, whether that means taking 20 ft. off here and working it in over here. . . That's all fine. That's working with the topography. When you say to me you have to take the whole thing out, that's not working with the topography, so . . . we recommend denial that it does not meet that section of the zoning regulation. . . ." (Supplemental ROR, Item 1: Transcript, 2/14/95, p. 10).[23]
The court does not agree with Summitwood's claim that the regulation is vague as it applies to the facts of this case. The regulation is sufficient to apprise Summitwood that the existing topography of the land would be considered in evaluating its site plan application. Under the regulation, any part of the site plan effecting the topography of the land could subject the plan to denial. "The core idea of a site plan review is to require a focus on the relationship of proposed physical structures to existing features of a site, including roads." T. Tondro, Connecticut Land Use Regulation, Second Ed., 1992, p. 180.
Other reasons were enumerated in Caruso's letter as grounds for denial. At the Commission meeting on February 14, 1995, Caruso stated that the staff recommends denial because the plan "does not conform with Section [213.26.5B(2)] which says application of [creative] design techniques to foster attractive, functionally efficient and well planned developments which will aesthetically be integrated into adjacent areas. Again, by removing something, it does not integrate so we recommend denial." (Supplemental ROR, Item 1: Transcript, 2/14/95, p. 10).
A third reason specified in Caruso's letter is that the plan does not conform to § 213-26.5C(2)(c), regarding earth and rock excavation. This accessory use provision was j not discussed at the Commission's meetings on February 14, 1995 and February 17, 1995, although reference was made to excavation at the project site in general.
The plaintiff has the burden of showing that the regulation complained of is impermissibly vague as applied to the facts of the particular case. See Barberino Realty Development Corp. v.Planning Zoning Commission, supra, 222 Conn. 620. Summitwood has CT Page 4687 not met its burden.
If the court "concludes that any one of several reasons submitted by the commission for its action is reasonably supported by the record, then the commission's actions must stand." Friedman v. Planning Zoning Commission, supra,222 Conn. 268. Assuming, however, that the Commission was not entitled to rely on the PDD regulations, the court will search the record for a basis for the denial under the site plan regulations.
D. Other Reasons for Denial of Summitwood's Site Plan Application.
In its brief, the Commission asserts that the site plan did not conform to various provisions of the site plan Regulations, § 213-55, and the PDD Regulations regarding accessory uses, § 213-26.5C(2)(c).
The Commission asserts that Summitwood's plan violates §§ 213-55B(5), (7) and (8), of the site plan objectives. Subsection (5) requires that existing trees be preserved to the maximum extent possible. Subsection (7) requires that all utility systems be designed to protect the property from adverse air, water or land pollution. Subsection (8) requires that the development of the site preserve sensitive land features, such as steep slopes, wetlands and large rock outcroppings.
The report by David Foley to the Commission states that the plan violates subsections (5) and (8) in that "every living thing in this entire 12 acre site will be killed . . . [the plan] clearly does not make any pretext of an attempt to preserve to the maximum extent possible the existing trees" and that" [e]very single sensitive environmental land feature, every steep slope, every wetland, every rock outcropping . . . is slated to be blasted to bits." (ROR, Item 28: Letter to John Netherton, Meriden Planning Commission, from Vincent McManus, Jr., 1/5/95, enclosing Site Plan Evaluation of David Foley, Professional Engineer). In addition, the record contains a memorandum from the planning staff to the Commission expressing the staff's position that the plan does not comply with subsection (8). (ROR, Item 22: Memorandum from Planning Staff to Planning Commission, 2/2/95).[24]
2. Conformance with PDD Accessory Use Provision. CT Page 4688
Summitwood addresses the accessory use provision only insofar as to insist that the proposed excavation on the site is incidental to the development and is clearly an accessory use. The Commission argues that Summitwood's site plan application violates § 213-26.5C(2)(c) of the PDD Regulations.[25] The record supports the Commission's conclusion.
Section 213-26.5C(2)(c) of the Regulations permits as an accessory use "[e]arth and rock excavation, and/or rock crushing for the preparation of land for permitted uses, accessways and utilities." An accessory use is defined in the Regulations as "[a] use incidental to the principal use of a lot or a building located on the same lot." Meriden Zoning Regulations § 213-7. The Commission does not contest that excavation necessary to prepare property for a permitted use is an accessory use. Rather, the Commission contends that the scope of the proposed excavation establishes that the excavation of rock at the site is the principal use of the land.
Foley's report, on which the staff relied in making its recommendation to the Commission, states that the excavation would last at least four to five years; would delay construction of the townhouses for five to six years; would entail removal of 625,000 cubic yards of material; and would require 47,000 truck trips. He reported that the excavation would create a twelve acre impervious tabletop, requiring re-establishment of ground cover and vegetation at a massive additional cost to the developer. He reported that runoff at the site would increase dramatically and would require water handling and detention ponds which otherwise would be less extensive. He asserted that the market value of the property would drop with the elimination of the vistas, the panoramic views and the natural tree setting. Foley asserted that the plan of development, requiring removal of 100 feet of rock from a 12 acre parcel, is consistent with a plan of development for a strip mine.
Foley maintained that the proposed excavation is not necessary to develop the property for townhouses. He stated that Summitwood's plan would actually reduce the number of townhouses that could be built on the property. He reported that the units could be constructed easily without removal of the hill and he submitted a design alternative in support of his position.
"Whether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be CT Page 4689 determined by it with a liberal discretion." (Internal quotation marks omitted.) Upjohn Co. v. Planning Zoning Commission,224 Conn. 82, 89, 616 A.2d 786 (1992). "In general terms, an accessory use is a use that is customary and incidental to a permitted primary use." Id. "The word `incidental' as employed in a definition of `accessory use' incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance . . . [and it] must also incorporate the concept of reasonable relationship with the primary use . . . it must also be attendant or concomitant." Lawrence v. Zoning Board ofAppeals, 158 Conn. 509, 512, 264 A.2d 552 (1969).
As previously set out, the record contains substantial evidence from which the Commission could reasonably conclude that rock excavation was the intended primary use of the property and that such excavation was neither subordinate to construction of the townhouses nor minor in significance. The scope of the proposed excavation bears no reasonable relationship to the alleged primary use. Furthermore, "[t]he court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved." ConnecticutHealth Facilities, Inc. v. Zoning Board of Appeals, 29 Conn. App. 1,10, 613 A.2d 1358 (1992). The court may not substitute its judgment for that of the commission and it may not disturb decisions of the commission as long as honest judgment has been reasonably an fairly exercised. Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995).
CONCLUSION
On the basis of the foregoing, Summitwood's appeal is hereby dismissed.
BY THE COURT
KEVIN E. BOOTH